C. B. SAMUEL *et al. v.* C. N. KING.

*(Nashville.* December Term, 1928.)

Opinion filed, March 22, 1929.

THOMAS, THOMAS & DARWIN and S. B. SMITH, for complainants, appellants.

P. H. THACH, for defendant, appellee.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

In exercise of an option, complainants, appellants here, acquired, in 1918, by bond for title, a certain land lot in Georgia, represented by the vendor to contain a mineral deposit known as talc. Following a preliminary and inconclusive examination the complainants allege that they were induced to complete their purchase, paying a part of the agreed consideration and executing notes for the balance, on the faith of positive representations by the seller that talc would be found in profitable quantities, coupled with his assurance that if not so found the consideration would not be exacted.

The bill sets up misrepresentations and a failure of the consideration in this regard, the deposit not being found in workable quantity, and prays for a cancellation of the purchase money notes remaining unpaid, and a recovery of the sums paid.

A demurrer was sustained by the Chancellor raising two questions, (1) of laches, and (2) that the parol evidence essential to sustain the allegations so conflicts with

the written agreement of sale as to be inadmissible under the rule.

*(1)* In our most recent case dealing with the doctrine of laches, *State* v. *McPhail,* 156 Tenn., 459, relied on by appellants, Mr. Justice McKinney reaffirms former holdings of this Court, and approves the statement of Mr. Pomeroy in his work on Equity Jurisprudence, to the effect that the doctrine is applied only "where the party invoking it has been prejudiced by the delay." In *Evans* v. *Steele,* 125 Tenn., 494, 495, Mr. Justice Lansden thus aptly stated the rule:

"Relief is generally refused by courts of equity, because of the lapse of time, only in such cases where the loss of evidence, death of witnesses or parties, and failure of memory resulting in the obscuration of facts to the prejudice of the defendant, render uncertain the ascertainment of truth, and make it impossible for the court to pronounce a decree with confidence. . . . The doctrine of laches in courts of equity is not an arbitrary or a technical doctrine. No hard and fast rule for its application can be formulated. But, when the court sees negligence on one side and injury therefrom on the other, it is a ground for denial of relief."

*(2)* It is only when the Court sees "negligence on one side and injury therefrom on the other" that laches may be invoked. These two elements must concur. Mere delay is not generally held to be sufficient, except in those cases in which fraud, which is not charged here, is made the ground of equitable relief. Fraud was involved in the case of *Pearson* v. *Washington College,* 130 Tenn., 601, wherein it was held that the fact that the donee was not injured by the donor's delay in bringing suit for rescission was immaterial. After reviewing the authori-

ties, Mr. Justice NEIL concludes with the observation that, "in cases not involving fraud the rule is not so strict," and, after citing *Prewitt* v. *Bunch,* 101 Tenn., 723, in which relief was granted after eight years, he adds, "every case turns largely upon its own facts." In the Prewitt case the doctrine of laches is discussed in terms applicable to the case at bar.

*(3)* There would seem to be a reason sound in principle for giving to mere delay a material significance in cases of fraud, not generally applicable. Fraud vitiates every contract *ab initio*. He who discovers fraud perpetrated against him must act promptly, or a suspicion of connivance will attach to him as a party willing to take benefits, if time yields them, and disposed to repudiate the transaction only after experimentation. Meanwhile, his own hands have become soiled. Also, inherent difficulties, arising out of mere delay, are peculiarly incident to litigation involving fraud.

In the instant case, the learned Chancellor found that complainants were guilty of too great delay, in that, while they discovered the absence of talc by the end of 1919, they did not file their bill until February, 1927. The nonresidence of the defendant, his failure to press collection of the balance purchase money, and other excusing matters, are offered in explanation of this delay; but, conceding that complainants are chargeable with negligence in this regard, we are unable to discover on the face of the bill wherein, or in what respect it appears that injury has resulted to the defendant.

As already indicated, this element must concur. The land stands unchanged. Market conditions are not shown to be now different. No evidence available to defendant earlier has become unavailable. If complainants have

failed to press for recission and cancellation of their notes, defendant has failed to press these obligations for payment. We are compelled to the view that this ground of demurrer should not have been sustained.

(4) The second issue is in more doubt. Expressions and holdings of the Courts generally are not uniformly clear touching this rule of evidence. In the recent case of *Litterer* v. *Wright*, 151 Tenn., 210, we said, "The fundamental distinction should be kept clearly in mind between the denied right to contradict the terms of the writing, and the recognized right without so doing to resist recovery thereon, or to rely upon matters unexpressed therein." And in *Bank* v. *Barbee*, 150 Tenn., at page 360, we quoted from Lord Mansfield this apt and forceful expression of the rule: "The foundation is that you shall not by parol impeach a written agreement, and say that the agreement was different; but, the agreement being admitted, the party may come and show circumstances to vitiate the whole proceeding."

Now testing the instant case by this statement of the rule it is not proposed to "say that the agreement was different;" its terms and provisions are in no way sought to be impeached, but it is proposed to show that representations made to induce its execution have proven to be false, and that the consideration has failed. This involves no contradiction of the terms of the writing, as was the case in *Litterer* v. *Wright,* supra, wherein the written lease in terms provided that the lessee agreed to make all repairs, and it was sought to show by parol an agreement to the contrary. Here it is sought to set up and rely upon matters unexpressed and not dealt with in the written agreement.

It is well settled, of course, that failure of consideration may always be shown in defense of a suit on a note, or other written instrument. And it is also clear that inducing representations made before, or contemporaneously with, the execution of a written obligation may be established by parol to defeat recovery thereon. Older cases so holding are *Hogg* v. *Cardwell*, 4 Sneed, 150, 157 and *Railroad* v. *Chumley*, 6 Heis., 328. The leading case of *Hines* v. *Willcox*, 96 Tenn., 148, approves this rule. And see 22 C. J., page 1253, Sec. 1665.

We apprehend that the learned Chancellor recognized these general rules, but he seems to have distinguished this case on the theory that what complainant seeks to establish by parol is, not so much inducing misrepresentations by the seller in bringing about the sale, but a contemporaneous stipulation that upon certain conditions the payments provided for in the writing would not be exacted. This he held to be in contradiction of the writing. It must be conceded, that the question is close, but, bearing in mind the rule that demurrers are not favored, altho conceding the plausibility of the distinction drawn, we are of opinions that the *substance* of the case stated by the bill brings the parol evidence within the admissible class. While true that the bill recites that the seller repeatedly assured complainants that should they purchase they would not be expected or required to pay for the land unless talc was found of the quantity and quality represented by him, and while these expressions of his are in form in contradiction of the written agreement obligating the purchaser to buy and pay for the land without expressed reservations, this specific assurance was, in effect, but an emphasis of the inducing representations. For illustration, if no such specific as-

surance had been made or set up in the bill, that is, the stipulation that the buyers would not be required to pay if talc was not found, and the allegations had been confined to the charge that the seller had misrepresented as an inducement that the land contained this mineral, certainly proof of such representations would have been admissible. Now does the fact that the bill goes further and alleges a definite promise by the seller to do that which the law would exact of him upon a showing that he had induced the transaction by misrepresentations, namely, relieve the purchasers from the performance of their obligation to pay for it, close the mouths of the purchasers? If A selling to B misrepresents inducing facts and procures the execution of sale papers, is B's testimony of the inducing misrepresentations rendered inadmissible by the fact that A's representations took the form of a direct stipulation that, if his representations proved untrue, he would not require B to pay for the property sold, in accordance with the terms of the writing? We think not. Proof of inducing misrepresentations being admissible, such admissibility is not affected by the specific form of the language employed. The material element of the evidence is the inducing representations, not the stipulation connected with it. A gives to B his note in payment for a horse, an unconditional promise to pay, B assuring A that the horse not then delivered, was alive. Would the fact that B coupled with his assurance the statement that, if the horse should be found to be dead, A would not be expected or required to pay the note, render inadmissible parol proof of the inducing misrepresentation, in the nature of a warranty? Certainly not.

In *Bank* v. *Barbee, supra,* in which it was held that proof of a contemporaneous stipulation that a drawer of a draft should not be held liable thereon was inadmissible, the holding was rested on the proposition that this evidence would contradict the terms of the writing. In that case the defense was grounded alone on this contradictory stipulation. The distinction calls for discrimination, but is sound. Here the defense set up is not rested on the stipulation, that contradicts the written agreement to pay, but on alleged misrepresentations inducing the execution, or acceptance, of the writing, and involves a failure of the consideration.

So, we are of opinion that the learned Chancellor was in error in sustaining either ground of the demurrer, and the decree is reversed and the cause remanded.