CRIGGER v. MUTUAL BEN. HEALTH & ACCIDENT ASS'N
—69 S. W. (2d) 907.

Western Section. August 15, 1933.

Petition for Certiorari denied by Supreme Court, January 24, 1934.

Bates, Shea & Frazer, of Memphis, for appellant.

Armstrong, McCadden & Allen, E. W. Braden, and Thomas C. Farnsworth, all of Memphis, for appellee.

SENTER, J. The original bill filed in this cause seeks to have a written release executed by the complainant to the defendant canceled and set aside and a recovery on a policy of insurance issued by the defendant for accident benefit payments, alleged to be due and owing to the complainant by the defendant.

There was a jury and issues of fact submitted to the jury, and a decree by the chancellor on the jury verdict in favor of the defendant, and the bill dismissed at the cost of complainant. A motion for a new trial by complainant was overruled. From the action of the chancellor in overruling the motion for a new trial and in dismissing the bill, complainant has appealed to this court and has assigned errors.

The bill alleged in substance that prior to the 3d day of April, 1931, he purchased and had delivered to him by defendant the policy of insurance sued on, whereby the defendant contracted to insure complainant against loss of life, limb, sight, or time resulting directly and independently of all other causes from bodily injuries sustained through purely accidental means; that the defendant, in case of such accidental injury, contracted to pay to complainant a monthly indemnity of $100 per month, if complainant should be wholly and continuously disabled for one day or more, from said

bodily injuries sustained through purely accidental means, said indemnity payments to continue. so long as complainant lives and suffers total loss of time; that the defendant further contracted, in the event of permanent total disability of the complainant, due to bodily injuries, or sickness covered by the policy, that there would be no further premiums payable by the complainant, but that the complainant would draw benefits as above provided. The bill then refers to certain provisions in the policy with reference to written notice of injury; affirmative proof of loss to be furnished in case of claims for loss of time for disability, and the issuance of the policy for the consideration of the premium mentioned.

The bill further alleges that complainant was not in possession of the policy of insurance sued on, and by reason thereof could not give the exact language of the policy, and demands that the defendant produce said policy and have the same at the hearing of the cause, but that the averments contained in the bill substantially set forth the terms and provisions of the policy contract; and that complainant had complied with all the essential provisions, and is therefore entitled to the indemnities and other benefits set out in the contract of insurance.

The bill alleges that while complainant was engaged in the occupation of an automobile mechanic, he suffered and sustained serious bodily injuries on April 3, 1931, purely through accidental means, which had caused him to suffer permanent and total disability since the date of said injury; that the said policy was in full force and effect at the time he received the injuries as the result of said accident; that he made the proofs and gave the notice to the defendant as required by the terms of the policy, and that the defendant paid to complainant the sum of $100 covering one month's indemnity or benefits, and represented the payment was for the first month of his disability.

The bill further alleges that, after said first payment of $100 had been paid, and after repeated demands had been made by him upon the defendant for the further monthly payments provided for under the contract, the defendant, its agents and servants, advised the complainant, who was then and has been since April 3, 1931, totally disabled, sick, and infirm, that by accepting the defendant's said check for $100 he had receipted the defendant for any and all claims which the complainant might have against the defendant, and that by receiving and cashing said check the complainant had released the defendant from any and all liability under its said policy; that, while making such claim that the defendant was no longer liable to complainant, the defendant advised the complainant that as a gratuity occasioned by the fact that he had been a policyholder for several years and was disabled, and to show that the defendant "was doing him right," the defendant would pay

him the sum of $500. The bill further alleges that, relying on the aforesaid statement of the defendant that he had released it from any and all liability as a result of the said accident, by receiving and cashing said $100 check, and believing said statements as to said purported release to be true, the complainant received from defendant the sum of $500, executed a purported release, and delivered his said policy to the defendant. The bill further alleges that, at the time of the receipt of said $500 and the delivery of said policy of insurance, and the execution of said purported release, all of which took place about the ——— day of November, 1931, the defendant was liable to complainant in a sum of excess of said $500 received by him, in fact being liable to the complainant in the amount of approximately $600 after giving the defendant credit for the said $100 monthly indemnity previously paid. The bill alleges that said representations which induced him to execute said purported release and deliver the said policy to the defendant were false, untrue, and fraudulent, and that said purported release, and said delivery of said policy were induced through chicanery and fraudulent representations, and that said purported release and the delivery of said policy were wholly without any consideration, and by reason thereof said purported release and the delivery of said policy, were void and of no force and effect, and that the contract of insurance is now a valid and subsisting contract between the defendant and the complainant. The bill alleges that complainant is entitled to have the court declare null and void any purported release and the delivery of said policy of insurance to the defendant, and to further have the court declare that said policy of insurance is a valid and subsisting contract between the complainant and the defendant, and that he is entitled to a decree against the defendant for monthly disability indemnities of $100 per month from April 3, 1931, for so long as he shall live and suffer total loss of time, and indemnities now accrued to be diminished by the payment of $600 heretofore made by the defendant to the complainant.

The bill prays for a decree declaring null and void any purported release executed by the complainant and the delivery of said policy of insurance to the defendant, and that said policy be decreed to be a valid and subsisting contract between the complainant and the defendant; that the complainant have a decree against the defendant for monthly indemnities which had accrued up to the hearing of the cause at the rate of $100 a month from April 3, 1931, the amount of said decree to be reduced by said $600 previously paid by defendant to complainant; that the complainant have a further decree against defendant declaring that defendant is liable to complainant for monthly indemnities at the rate of $100 per month so long as he shall live and suffer total loss of time, and that so long as complainant suffers and sustains a permanent total disability.

The bill calls for a jury to try the issues tendered.

The defendant answered the bill and admits the issuance of the policy of insurance sued on, and whereby the defendant contracted to insure the complainant against the loss of life, limb, sight, or time resulting directly and independently of all other causes from bodily injuries sustained through purely accidental means, and against loss of time on account of disease contracted within the provisions and limitations of the policy. The answer admits that by the terms and provisions of the policy it contracted to pay the complainant a monthly indemnity of $100 a month if the complainant should be wholly and continuously disabled for one day or more from said bodily injuries sustained through purely accidental means, and said indemnity payments to continue so long as the complainant lives and suffers total loss of time. The answer admits that the defendant is in possession of the policy, and states that said policy was delivered by the complainant to the defendant for good and valuable consideration. The answer denies that complainant has complied with, and is within, the essential provisions and limitations of the policy of insurance sued on, and the defendant further denies that the complainant is entitled to receive any monthly or other benefits under said policy.

The answer denies that the complainant, while engaged in his occupation or vocation of an automobile mechanic, suffered and sustained on April 3, 1931, bodily injuries through purely accidental means which had caused the complainant to suffer a permanent and total disability continuously since said date. The answer admits that the policy was in full force and effect on the 3d day of April, 1931, but denies that complainant since the 3d day of April, 1931, has been permanently disabled and physically incapacitated from said bodily injuries sustained through purely accidental means, or that the complainant has been wholly and continuously disabled since said date to engage in any work, vocation, or occupation. The answer denies that the complainant within the period of time required in said policy gave the written notice of the injury and furnished the proofs of loss as required by the policy; and denies that the defendant is liable to the complainant at the rate of $100 per month and that said liability is to continue so long as complainant lives and suffers total loss. The answer admits that it did pay to the complainant the sum of $100, but that by said payment it did not admit liability under said policy. It denies that, after the payment of the $100, its agents or servants advised the complainant that, by accepting the defendant's said check for $100, he had receipted defendant for any and all claims which complainant might have against it, and that by receiving and cashing said check the complainant had released the defendant from any and all liability under said policy. The answer denies that it had advised the com-

plainant that, as a gratuity occasioned by the fact that he had been a policyholder for several years and was disabled, and to show that the defendant was doing right by him, the defendant would pay him the sum of $500. It admits that the defendant did pay to complainant the sum of $500, but denies that said payment of $500 was received by the complainant under any false or fraudulent representations, but alleges that said payment was received by the complainant in full settlement, accord, and satisfaction of any and all claims that complainant may have had against the defendant, and denies that at the time the complainant received said $500 and executed the release on the ——— day of November, 1931, defendant was liable to the complainant in a sum in excess of $500, or liable to the complainant in any sum whatsoever. The answer emphatically denies that any fraudulent representations were made to induce complainant to sign the release and accept the $500 and to surrender the policy. The answer alleges that the disabilities claimed by complainant did not result from the accident complained of, and denies that complainant was at the time of said settlement permanently disabled within the meaning of the policy, and alleges that there was a controversy between complainant and defendant on the question of liability, and that, with full knowledge of all the facts, complainant accepted the $500 in full settlement and satisfaction of any and all claims which he had against the defendant as the result of said alleged injuries, and executed the written release and surrendered the policy and cashed the $500 check, and sets out in detail the alleged facts under which said alleged settlement was made.

The answer also states that the complainant had received said $500 and had gotten the full benefit thereof, and had retained the $100 and the $500 paid by defendant to complainant, and had not tendered or offered to repay the same.

Certain amendments were made to the original bill unnecessary to notice.

At the hearing of the cause, the following issues of fact were made up and submitted to the jury under instructions by the chancellor:

"No. 1 (a) Did John W. Crigger on or about April 3, 1931, suffer an injury to his back resulting directly and independently of all other causes from purely accidental means, which wholly and continuously disabled him, and caused him to suffer the total loss of time for one day or more?" To this the jury answered, "Yes."

"(b) If 'Yes' to issue a-1, state how long John W. Crigger was or has been so wholly and continuously disabled from said bodily injuries that he suffered total loss of time." To this the jury answered, "Yes, up to date."

"No. 2. Was any purported release executed by John W. Crigger

in connection with the receipt and cashing of the check or draft for $100, induced by the statement of an agent of the defendant that the check for $100 covered indemnity for only a month." To this issue the jury answered, "Yes."

"No. 3. If 'Yes' to issue No. 1, did John W. Crigger execute the purported release on the 30th day of October, 1931, and deliver his policy of insurance to the defendant, relying on material representations of fact by the defendant, which were false, untrue or fraudulent?" To this issue the jury answered, "No."

By the first and second assignments of error it is contended by appellant that there is no evidence to support the verdict of the jury in their answer to issue No. 3; and no material evidence to support the verdict of the jury in the answer to issue No. 3. By the third and fourth assignments it is said that the verdict of the jury in answering issue No. 3 was against the weight of the evidence, and that the evidence preponderates against the verdict and finding by the jury in the answer to issue No. 3. This being a jury verdict concurred in by the trial judge, assignments 3 and 4 cannot be considered by this court under the well-settled rule that this court cannot weigh the evidence to determine the preponderance.

By the fifth assignment it is said that the court erred in submitting to the jury issue No. 3, for the reason that all the proof shows that complainant, Crigger, executed the release dated October 30, 1931, relying on material representations of fact by defendant, which were false, untrue, and fraudulent.

By the sixth assignment it is said that it was error of the court to overrule complainant's motion made at the conclusion of all the proof for a peremptory instruction in his favor as to said issue No. 3. By the seventh assignment it is urged that it was error of the court to sustain the answer of the jury to issue No. 3 and to approve the verdict of the jury as to that issue. By the eighth assignment it is said that the court erred in failing to enter a decree sustaining the bill of complainant upon all the proof in the cause as a matter of law, on the theory that the proof was undisputed that the complainant executed the purported release on October 30, 1931, and delivered his policy of insurance to the defendant relying on material representations of defendant, which were false, untrue, and fraudulent. By the ninth and tenth assignments of error it is contended that the court was in error in dismissing the original bill and in denying complainant's motion for a new trial. The eleventh and final assignment complains that the court failed to charge the theory of the complainant on the question of material representations of fact made by the defendant and which were false and untrue.

We will not undertake to discuss and dispose of each of the assignments of error in the order filed. The record is comparatively

small, but both appellant and appellee have filed very elaborate briefs.

It appears that the complainant received an injury on April 3, 1931, and soon thereafter made claim against the defendant for indemnity under the policy. The proof of loss furnished in support of the claim contained a statement by the physician that complainant would be totally disabled for one month. Upon this proof of loss being received, the defendant sent its check or draft to the complainant for the sum of $100. This covered one month's disability indemnity under the policy. The draft recited that it was in full settlement of all claims for disability on account of the injury sustained. The draft did not reach complainant until about ten or eleven days after the first thirty days had expired, and was delivered to the complainant by an agent of the defendant. The complainant testified that he hesitated to accept the check for $100, but, upon being assured by the agent that it was only intended to cover one month, he did accept the check and cashed the same. It also appears that, subsequent to the cashing of the check, the defendant denied liability for any further additional sums under the policy, and, after some correspondence, a representative of the defendant, after first making investigation with reference to the nature and extent of the injuries to complainant, and after discussing with the physician, called on the complainant with the view of adjusting or settling the claim for additional indemnity or benefits. There is some conflict in the evidence as to what occurred between complainant and the representative of the defendant. The complainant testified in substance that the agent of the defendant claimed to him that the check or draft which he had received and collected for $100 contained a written release of any further liability to complainant, but he wanted to treat him fairly and generously, and proposed to give him $500; that he left the draft for $500 with him, with instructions that, if he decided to accept it, he should attach the policy to the draft and indorse the draft, and that it would be paid; that after several days, and relying upon the representation made by the agent of the defendant that the check for $100, which he had previously cashed contained a complete release, and relying upon that representation, he finally decided to cash the draft and to return the policy with the draft to the defendant. The agent of the defendant testified in substance that, after carefully examining the hospital records and after consulting the surgeon in charge of complainant's case and getting the information from that source, he called on Mr. Crigger. This witness, Mr. Cronk, on this subject, testified as follows:

"I then called upon Mr. Crigger, and pointed out to him that he had already released us from any liability for the injury occurring on April 3, and that we were not admitting that this disability was

the result of that injury, and I then told him what the doctor had said about his prognosis and opinion, and that, rather than have a lawsuit, if there was any way possible to get together on an amicable basis, I would be willing to do so, and we discussed the case pro and con, and finally arrived at a settlement upon the basis, relying solely upon the information furnished me by his own doctor as to the prognosis and duration of this condition. We arrived at a compromise adjustment of $500. A draft was issued in that amoun at that time by me in my own writing, together with the release. The release was signed in my presence and was left with Mr. Crigger, with the understanding that if it was not acceptable, if for any reason whatever he did not care to accept this draft, that all he had to do was not to cash the draft, but to give it back to me, and he could tear up the release or do anything he wanted to with it, and I didn't take the release back, and if it was acceptable to attach the policy to the draft and deposit it for payment at the bank, for otherwise it would not be honored at the home office."

This witness was further asked and answered:

"Q. When you left there did Mr. Crigger seem dissatisfied in any way? A. Absolutely he was exceedingly well pleased."

This witness further testified:

"Q. Mr. Cronk, have you related to us substantially all that took place between you and Mr. Crigger at the time this transaction was closed? A. Yes, I think so, substantially. There might have been some details that I have not mentioned, I can't recall anything of importance, however, it was just a general conversation regarding the merits and demerits of the claim; that we were not admitting any liability whatever, and that, as an effort to close the case out without litigation or any unpleasantness, that if it was possible to reach a compromise satisfactory to both parties, that that was the solution of the case."

He was further asked and answered:

"Q. Did you at any time in your negotiation with Mr. Crigger attempt to make or make any misrepresentation of fact to him? A. No, I just offered my opinion about what we thought of the case. I merely, in discussing this case, offered our opinion as to what we felt as to liability or nonliability. . . ."

It is well settled that a release or discharge, the execution of which is procured by false and fraudulent representations, is voidable or void, and may be set aside at the instance of the party defrauded. Rose v. Foutch, 4 Tenn. App., 495; Fisher v. Probart, 5 Hayw., 75; Barnard v. Roane Iron Co., 85 Tenn., 139, 2 S. W., 21; Clement v. Ins. Co., 101 Tenn., 22, 46 S. W., 561, 42 L. R. A., 247, 70 Am. St. Rep., 650; Shwab v. Walters, 147 Tenn., 639, 251 S. W., 42; Samuel v. King, 158 Tenn., 546, 14 S. W. (2d), 963. There is abundant authority to support the rule that a false representation

as to one of several matters which is material and which enters into the consideration in procuring a settlement, and is one of the actuating inducements to procure an unfair settlement, is sufficient to render the whole contract or release void. 13 C. J., 390, sec. 295; 12 R. C. L., 358; Richardson v. Vick, 125 Tenn., 532, 145 S. W., 174, and cases cited.

It is also contended by appellant that one cannot escape the consequences of fraudulent misrepresentations by showing that the party defrauded had an opportunity to make an inspection or investigation, or otherwise ascertain the truth for himself. In support of this contention appellant cites the cases of Scott v. Johnson, 5 Heisk. (52 Tenn.), 616; Shwab v. Walters, 147 Tenn., 638, 251 S. W., 42; Graves v. Haynes (Tex. Com. App.), 231 S. W., 383, 385; Vernson v. Baker, 124 Kan., 575, 261 P., 563, and Baker v. Mathew, 137 Iowa, 410, 115 N. W., 15.

It is further contended that a release or contract executed under a mistake of law is voidable and may be set aside if induced, or tainted, by imposition, misrepresentation, undue influence, or misplaced confidence. In support of this proposition numerous authorities are cited.

■■ It is upon the above proposition that appellant relies for a reversal by this court. Issue No. 3 is the only issue of fact submitted to the jury and the answer thereto that is made the subject of attack by appellant under the several assignments of error. Under the well-settled rule, if there is material evidence to support the verdict of the jury on any issue submitted to the jury, concurred in by the trial judge, the jury verdict will not be disturbed on appeal. There was a conflict in the evidence as to just what occurred between complainant and the agent of defendant at the time the $500 draft was delivered to complainant and the release signed by the complainant. It is the contention of appellant that the fact that he had previously signed a release upon the payment of the $100 was the actuating inducement to his acceptance of the subsequently tendered $500 draft, and the execution of the release signed by him at that time; and that said first release for $100 was admittedly fraudulently procured; it being further contended in this connection by appellant that the verdict of the jury in answering issue No. 2 is conclusive that said first receipt was obtained by fraudulent misrepresentations. Issue No. 2 was in the following words:

"Was any purported release executed by John W. Crigger in connection with the receipt and cashing of the check or draft for $100 induced by the statement of an agent of the defendant that the check for $100 covered indemnity for only one month?"

This issue does not present the question to the jury that any fraud was resorted to by the defendant in inducing the complain-

ant to accept the $100 check and to sign the release. The jury simply found that the agent of the defendant represented to the complainant that the check for $100 covered indemnity for only one month. The physician who had signed the proof of loss stated at the time he signed the statement in connection with the proof of injury or loss that the complainant would be totally disabled for one month. This was a part of the proof of loss furnished by the complainant to the defendant, and the draft for $100 was promptly delivered to the complainant containing the written release. It is very probable that the defendant in sending the draft for $100 containing the release from further liability acted upon the mistaken assumption, in construing the statement by the physician, that complainant's total disability would only extend for one month. This was a clear mistake of fact, and a mutual misunderstanding, and, as a result, would not be binding upon the complainant. However, it appears from the evidence of Mr. Cronk, the agent and adjuster for the defendant, that he discussed with the complainant the matter of the liability of defendant for any amount after having first investigated at the hospital and with the surgeon and doctor of complainant as to the nature and extent of the injuries sustained, and the facts pertaining thereto, and was unwilling to admit that the defendant was liable for any amount on account of the alleged injury, and that the settlement was proposed, and the complainant given ample opportunity to consider the settlement. As a fact, the complainant for reasons unexplained, kept the draft for about two weeks before he ultimately decided to accept it. The jury found that there was no fraud or misrepresentation or any unfair conduct upon the part of the defendant in procuring the execution of the release by complainant. Nor do we think that this is a proper case for the application of the rule that a release executed by mutual mistake of fact or of law would vitiate the contract or release.

In the present case there is no effort to show that the complainant entertained an honest mistake of fact, mutually shared by the defendant, as to the nature and extent of his injuries. He was in full possession of all the facts, and fully understood and knew the nature of his injuries and the probable duration. There is evidence in the record to warrant the conclusion that the defendant entertained serious doubts as to the disability of complainant, resulting from the alleged injuries received in the accident of April 3, or that the disability was caused solely by said injury and independent of all other causes. In this situation it was denying any liability, or rather not admitting any liability, but entered into the compromise settlement.

We are of the opinion that there is material evidence to support the verdict of the jury in its answer to issue No. 3, and that there was no error in overruling complainant's motion for a new trial.

Another serious question is made by appellee, and that is that in no event can complainant obtain the relief sought by his bill without first tendering the amount received by him in the settlement. Appellee, in support of its position on that question, relies upon numerous authorities, including the Tennessee cases of Lane v. Dayton Coal & Iron Co., 101 Tenn., 581, 48 S. W., 1094, Memphis Street Railway Co. v. Giardino, 116 Tenn., 368, 92 S. W., 855, 8 Ann. Cas., 176; Glover v. L. & N. Railway Co., 163 Tenn., 86, 40 S. W. (2d), 1031. These cases were suits for unliquidated damages growing out of personal injuries. Appellant contends that the rule does not apply to actions for liquidated damages under a contract, and relies especially upon the case of Conrad v. Life & Accident Ins. Co., 141 Tenn., 14, 206 S. W., 34, 35, wherein the court held that a tender of the amount previously paid was unnecessary under the facts of that case, stating:

"The rule, however, is subject to some limitations and exceptions. It does not apply where the defendant admits that what was paid was justly due under the contract sued on."

We do not think that the Conrad case goes to the point of holding that the general rule making a tender prerequisite to maintaining a suit to set aside and declare void a settlement wherein a sum of money is paid in settlement of a demand, either liquidated or unliquidated, but only applies where the defendant admits that the amount paid by him was justly due under the contract sued on.

In the present case, the defendant neither by its plea nor its action in refusing to pay the claim admitted that it was due any amount to complainant, but denied any liability on the claim.

However, in the view we have taken of the case, it becomes unnecessary to decide this question, since we are of the opinion that the assignments of error must be overruled and the judgment of the lower court affirmed.

It follows that all assignments of error are overruled, and the decree of the chancellor is affirmed. The appeal is in forma pauperis, and the cost of the appeal will be paid by appellant.

Heiskell and Anderson, JJ., concur.