SOUTHERN TRACTOR CO. v. BROWN CONSTRUCTING CO.— 98 S. W. (2d) 1082.

Western Section. July 5, 1935.

Petition for Certiorari denied by Supreme Court, November 21, 1936.

Lowell W. Taylor, of Memphis, for appellant.
Gilliland, Taylor & Gilliland, of Memphis, for appellee.

KETCHUM, J. This is a suit by the Tractor Company to recover on a series of notes, aggregating $3,924, executed by the Constructing Company for deferred payments on the purchase of a used Caterpillar Diesel tractor purchased from complainant and also on open account for parts for said tractor amounting to $904.37. The defenses are (1) a breach of warranty of fitness of the tractor for the purpose for which it was purchased, and (2) false and fraudulent misrepresentations as to the condition of the tractor made as an inducement to defendant to purchase it, entitling the defendant to a rescission of the contract.

The defendant in its answer demanded a jury. At the trial the complainant introduced its treasurer as a witness, and by him proved the signed order for the purchase of the tractor, the conditional sales contract, and the notes sued on, all bearing the signature of the defendant. It also proved the open account for parts furnished, and the reasonable compensation of complainant's solicitor as provided for in the face of the notes sued on.

The signed order recites that the tractor was furnished "only in accordance with the manufacturer's standard warranty;" and that "no warranty is made, or authorized to be made by the manufacturer, other than that herein set forth;" and that "no represensative or agent has any power to make any additions to, or to vary the terms and conditions hereof." And the conditional sales contract provides:

"Seller agrees to sell all 'Caterpillar' products described herein. and buyer agrees to buy the same, without warranty of any kind except the manufacturer's standard warranty printed on the reverse hereof, which warranty the buyer hereby accepts in lieu of any warranty by the seller, whether express or implied."

The manufacturer's standard warranty provides:

"The manufacturer warrants all machines sold by the manufacturer . . . for six months after date of shipment; this warranty being limited to the replacing (without charge except for transportation) . . . of such parts as shall appear to the manufacturer to have been defective in material or workmanship. The manufacturer's warranty does not obligate it to bear the cost of labor in replacement of defective parts. No warranty is made or

authorized to be made by the manufacturer other than that herein set forth. . . ."

This tractor had previously been sold by complainant to one George C. Weathers, doing business as the Greenville Construction Company, and had been used by him for 31 days on levee work at Friar's Point, Miss. It had been repossessed from him, and had been overhauled by complainant, and certain new parts added, and was sold to defendants as a used tractor, but with a new tractor warranty; that is, to replace any defective parts within 6 months from date of sale.

The order was signed at Memphis on October 19, 1933, and the tractor was delivered to defendant on the following day. At the request of defendant the complainant had one of its employees drive it across the bridge, and it was turned over to defendant's driver at the end of the viaduct, on the levee on the Arkansas side of the river. It was at once put in use by defendant in regular levee work near Luxora, Ark., and was constantly used in this work, except when laid out for repairs, until April 18, 1934, when it was returned to the levee at the end of the viaduct at West Memphis, and left in care of the S. K. Jones Camp, and complainant was notified that it was there subject to its order.

The conditional sales contract and notes were signed after the tractor had been in use for the defendant for about a week. The contract provided for an initial payment of $1,000 on November 1st, and the first note for $654 was payable on November 15th. These payments were made on January 1st and January 15, 1934, respectively. No further payments were made. On January 15, 1934, the defendant wrote complainant the following letter:

"We will not be able to pay any more tractor notes until after the winter season is over, as we are doing very little work, owing to weather conditions, not taking in enough to pay operating expenses.

"Yours very truly,

"Brown Contracting Co."

When complainant's salesman, Davis, took the conditional sales contract and notes over to defendant's camp to be signed, Brown told him that the tractor had not been working right, and Davis assured him that the service men would be sent over to put it in order, and this was done. Thereafter, complaints were made from time to time that the tractor was underpowered, and that the steering gear and clutches did not function properly, and in answer to each complaint service men were sent over promptly to remedy the trouble, and may new parts were installed without charge so as to make it work satisfactorily.

The tractor was in regular use by the defendant on heavy levee work for 22 hours per day for approximately 6 months, or until

April 18, 1934, when the defendant wrote complainant that the condition of the tractor had been "so grossly misrepresented to me by your salesman," and it was so worn, and so abused before defendant purchased it, that defendant could not afford to spend any more time and money on it in trying to get it in condition to work, and it had therefore returned it "to the end of the viaduct on the levee in West Memphis in care of the S. K. Jones camp there, where it is at your disposal."

This was the first time any intimation was made that complainant had in any way misrepresented the condition of the tractor.

The defendant being at that time in default in the payment of its notes, all the notes were declared to be due and payable and this bill was filed on April 23, 1934.

The purchase of this tractor was first suggested to defendant by Mr. Davis, a salesman of complainant, and at his suggestion Mr. Brown afterwards came to complainant's place of business and saw the tractor while it was being overhauled. The subsequent negotiations were with Mr. Mills, the president of complainant. Brown had known Mr. Mills for many years, and had bought many tractors from him while he was president of the Mills-Morris Company. All his dealings with him had been satisfactory, and he had confidence in him.

Brown testified, over the objection of the defendant, that Mills represented that this tractor had been completely overhauled and reconditioned, and that new parts had been installed wherever needed, that the tractor was as good as new, and would be sold with the warranty of a new tractor, and that he would save $1,000 by buying it instead of a new one, and that this was the inducement to him to purchase a used tractor. He testified that he relied upon this representation and purchased the tractor upon the faith of it, and that he subsequently learned that the motor had been burnt out by the use of improper fuel oil while Weathers had it, and that the motor had not been reconditioned, and that new pistons, rings and sleeves were needed before it would function properly.

The complainant objected to this character of testimony upon the ground that it contradicted the terms of the written contract of warranty; the chancellor overruled the objection, but with the right to complainant to move to exclude the evidence later if it desired to do so. At the conclusion of the defendant's evidence, the complainant moved to exclude all of this character of testimony, and to withdraw the issues from the jury, and render a decree in favor of complainant; and, after argument, the chancellor granted this motion upon the following grounds:

(1) That the parol evidence of oral representations made by complainant to defendant as an inducement to it to purchase said

tractor was inadmissible because said evidence contradicted the terms of the written contract;

(2) Because there was no evidence of any fraud on the part of complainant;

(3) Because the defendant did not seek to rescind the contract within a reasonable time after it knew, or could have known, of said alleged misrepresentations;

(4) Because the undisputed evidence showed that the tractor was not in substantially as good a condition when returned by defendant as it was when it was delivered to it; and, finally,

(5) Because the undisputed evidence showed that the defendant did not return the tractor to complainant at the place of sale.

The chancellor accordingly rendered a decree in favor of complainant for the amount sued for; and the defendant's motion for a new trial having been overruled, it has appealed to this court.

The first three assignments of error complain of the action of the court in excluding this testimony offered by the defendant, in withdrawing the issues from the jury, and in rendering a decree for complainant.

The chancellor was of opinion and held that these representations were, by section 7205 of the Code (section 12 of the Uniform Sales Act), declared to be express warranties, and that, in view of the provisions of the written agreement which excluded such oral warranties, parol evidence thereof was inadmissible. Said section of the Code provides:

"Any affirmation of fact or any promise by the seller relating to the goods is an express warranty if the natural tendency of such affirmation or promise is to induce the buyer to purchase the goods, and if the buyer purchases the goods relying thereon."

The chancellor was right in his conclusion in this regard. The whole theory of the defendant is that it relied upon the complainant's "affirmation of fact" that the tractor had been completely overhauled, and that new parts had been installed wherever needed, and that it was induced by said representation to purchase said used tractor. The representation was, therefore, an express warranty within the language of the statute, and this warranty, existing only in parol, and being in direct conflict with the provisions of the written contract, the testimony relating thereto was inadmissible and was therefore properly excluded. The test is whether the parol testimony contradicts or varies the terms of the written agreement.

The case of McGannon v. Farrell, 141 Tenn., 631, 214 S. W., 432, 435, is in point. In that case the complainants sold to McGannon a choice residence lot upon an agreement that he would erect two residences thereon of such character as would enhance the value of the complainants' adjoining lots. There was no written contract

of sale, and this agreement was not embodied in any writing, and the property was conveyed without any conditions or restrictions being reserved in the deed. The chancellor and the Court of Civil Appeals were of opinion that complainants were entitled to prove the inducing agreement by parol, and to recover damages for its breach. The Supreme Court in reversing the lower court said:

"We have carefully examined the cases of Betts v. Demumbrune, Cooke, 39; Vanleer v. Fain, 6 Humph. [104] 113; Leinau v. Smart, 11 Humph., 308; Lewis v. Turnley, 97 Tenn., 197, 36 S. W., 872; Hines v. Willcox, 96 Tenn., 148, 33 S. W., 914, 34 L. R. A., 824, 832, 54 Am. St. Rep., 823, which are relied on by the plaintiffs below to support their contention that parol evidence is admissible to set up and establish the agreement forming the basis for their suits, and we are of the opinion that said cases are not controlling. In all of those cases the parol evidence offered in no way contradicted or altered the terms of the written contract, but tended to establish an independent, collateral agreement not in conflict with it."

In Litterer v. Wright, 151 Tenn., 210, 268 S. W., 624, the lessee attempted to set up a parol agreement that the lessor had bound himself to repair the roof on the building leased, and that the roof had caved in, to his damage. In holding that such testimony was not admissible, the court said:

"Conceding the general rule that evidence is inadmissible to contradict a written agreement, it is insisted for defendant lessee that the alleged parol promise of the lessor, made prior to or contemporaneously with the execution of the lease, to repair or renew the roof, if necessary, was an inducing representation, or consideration, and under authorities cited (Hines v. Willcox, 96 Tenn., 148, 33 S. W., 914, 34 L. R. A., 824, 832, 54 Am. St. Rep., 823, and others) is within recognized exceptions to the rule and therefore admissible. Neither in Hines v. Willcox, supra, nor in cases cited in that opinion, did the proof admitted contradict the recitals of the writing. In the Hines Case there was no express stipulation, such as we have here, in the written lease executed by the parties, that the 'lessee rents the property herein rented in its present condition,' and that the lessee 'agrees to make all necessary repairs on the premises herein rented in order to keep same in a proper and safe state of repair.' Evidence that the lessor had agreed to make necessary repairs on the premises is directly contradictory of the terms of the writing and clearly inadmissible.

"Parol proof of inducing representations to the making of a contract reduced to writing must be limited to matters not otherwise plainly expressed in the writing. No well-considered case will be found holding otherwise. The fundamental distinction should be kept clearly in mind between the denied right to contradict the

terms of the writing, and the recognized right without so doing to resist recovery thereon, or to rely upon matters unexpressed therein. The ultimate test is that of contradiction, which is never permissible.''

In the more recent case of Deaver v. Mahan Motor Co., 163 Tenn., 429, 43 S. W. (2d), 199, 200, the purchaser of an automobile sought to recover damages upon the ground that the automobile purchased had been falsely represented as having never been in a wreck, and which representation both the trial court and the Court of Appeals found to be false. The written contract, subsequently entered into, contained the recital that ''the seller guarantees only the title to said automobile to the purchaser and the above constitutes every agreement to be recognized in this transaction.''

The Court of Appeals held that parol evidence of the false representation was admissible; that it was a material inducement to the purchaser of the automobile, and that the purchaser was entitled to a recovery, saying:

''The representations were matter of inducement to the sale and therefore not necessary to be incorporated in the written contract, but competent to be established by parol.

''Representations of the seller as to the quality of property sold are not°part of the contract, but inducement to the sale and therefore can be proven by parol as warranties although not mentioned in the written contract. Hogg v. Cardwell, 4 Sneed, 151, 157; Waterbury v. Russell, 8 Baxt., 159, 162.''

The Supreme Court reversed the ruling of the Court of Appeals in this case, stating that, as applied to the facts in that cause, the holding of the Court of Appeals was in direct conflict with the holding in Litterer v. Wright, supra, quoting in its opinion the paragraph last hereinabove quoted from the opinion in that case. And the court further said:

''The court, in Litterer v. Wright, referred expressly to the two cases cited in the quoted excerpt from the opinion of the Court of Appeals, and also to the case of Hines v. Willcox, 96 Tenn., 148, 33 S. W., 914, 34 L. R. A., 824, 832, 54 Am. St. Rep., 823, and distinguished them by showing that the contracts there involved simply contained no warranty, so that parol proof of inducing representations did not contradict the writing. It would have been otherwise, the court said, if the written contracts had contained an express contrary recital. See, also, McGannon v. Farrell, 141 Tenn., 631, 643, 644, 214 S. W., 432; Samuel v. King, 158 Tenn., 546, 14 S. W. (2d), 963.

''The written contract before us not only contains an express warranty of title, but, by the use of the word 'only,' expressly limits the warranty to the matter of title, and then stipulates that

the writing 'constitutes every agreement to be recognized in this transaction.' Proof of a previous warranty of quality and condition is in direct and clear conflict with this written stipulation, and is both incompetent and ineffective to alter and change the contract as written.''

The holding in Samuel v. King, 158 Tenn., 546, 14 S. W. (2d), 963, 964, relied upon by the defendant, is not inconsistent with the holding in this case, but, on the contrary, quotes from Litterer v. Wright, supra, and recognizes the rule as there stated. In Samuel v. King, a purchaser of a tract of land sued to rescind upon the ground that he had purchased the land on the faith of positive representations by the seller that talc would be found in profitable quantities. It was alleged that this representation was false, and rescission was sought upon that ground, as well as upon the ground of failure of consideration. The court, speaking through Justice Chambliss, say:

''This involves no contradiction of the terms of the writing, as was the case in Litterer v. Wright, supra, wherein the written lease in terms provided that the lessee agreed to make all repairs, and it was sought to show by parol an agreement to the contrary. Here it is sought to set up and rely upon matters unexpressed and not dealt with in the written agreement.''

So far from being at variance with the cases above referred to, this case is in thorough accord with them. These cases are controlling here. The signed order recites that the tractor was sold ''only in accordance with the manufacturer's standard warranty,'' and that ''no warranty is made, or authorized to be made by the manufacturer, other than that herein set forth;'' and the conditional sales contract provides that the ''buyer agrees to buy the same without warranty of any kind except the manufacturer's standard warranty printed on the reverse hereof, which warranty buyer hereby accepts in lieu of any warranty by the seller, whether express or implied.''

It would be difficult to find language more clearly excluding oral warranties sought to be proved here as ''inducements'' to the purchase of said tractor.

But, it is insisted on behalf of defendant that fraud vitiates all contracts, and that this evidence was admissible for the purpose of showing the ''gross fraud'' perpetrated by Mr. Mills upon the defendant when he represented that the tractor had been completely overhauled and reconditioned, and new parts installed wherever needed. And the charge is made that the motor had been burned out by the use of unsuitable fuel oil by the former purchaser, Weathers, and that the interior of the motor had been so damaged as to destroy its compression, and that ''complainant

knew this condition had not been corrected, and no new parts installed in the motor at the time of sale and delivery to defendant.''

There is no competent evidence in the record that the motor had been burned out by the use of improper fuel oil while Weathers had it; this statement is based upon certain hearsay testimony of the defendant's witness, David, a former salesman of complainant, and at the time of the trial a salesman for a rival concern. His testimony was that while Weathers had the tractor ''the boys (service men) were coming in from time to time saying that the tractor was losing its power,'' and ''this service man said they were using a concoction fuel . . . whatever they could get to burn; that they were taking gasoline and pouring motor oil in it to make up the fuel.'' The witness, who did not qualify as an expert, and who did not know the specifications for fuel oil for a Diesel engine of this type, was permitted to give the opinion that the use of an inferior grade of fuel in any motor would have a tendency to wear down the piston walls, the pistons and rings. This is the only evidence referred to as showing that the motor had been burned out before the sale to the complainant, and after a careful reading of the record we have found no competent evidence warranting the statement.

But granting that such may have been the fact, we are not referred to any evidence to show that Mr. Mills had any knowledge of it. The defendant Brown himself testified to the great confidence he had in Mr. Mills' business character and integrity, based upon many years of satisfactory dealings with him as president of the Mills-Morris Company; and we find in this record no proven facts to warrant the charge of fraud made against him in this transaction. On the contrary, the undisputed evidence is that he ordered this tractor completely overhauled and reconditioned, and new parts installed wherever needed, so that it could be resold under a new tractor guaranty. The testimony of defendant's witness, Davis, on this subject is as follows:

''Q. You knew the orders were to do everything to it that it needed?

''A. That was the orders.''

And, again with reference to the installation of new parts wherever needed, Davis says:

''A. Well, so far as needing new parts, we didn't think it was going to need so very many parts, because it had only been used thirty-one days.''

The proof is abundant that the tractor was overhauled and reconditioned, and new parts installed wherever needed, so far as Mills, the president, or Davis, the salesman, knew. And the proof is abundant that complainant sent its service man to repair the tractor whenever the defendant made complaint that it was not

working satisfactorily during the 6-month period that the defendants used it.

The defendant relies upon the case of Ferguson v. Koch, 204 Cal. 342, 268 P., 342, 58 A. L. R., 1176, to support its contention that it can go behind the written contract, because of the false and fraudulent misrepresentations made by Mr. Mills that the tractor had been completely overhauled and new parts added wherever needed. The case has no application here because of the entire absence of fraud in the present case. Fraud is not only not proven, but we find no competent evidence whatever even tending to support the charge.

It results that the first three assignments of error must be overruled; and, as they are determinative of the case, it becomes unnecessary to consider the remaining assignments based upon the action of the court in declining to permit the defendant to amend its answer, in refusing to permit certain witnesses to testify because they had violated the rule, in excluding certain testimony, and in declining to permit the defendant to file a cross-bill so as to recover back the $1,654 paid on the purchase of the tractor.

The decree of the chancellor would have to be affirmed upon still another ground. The chancellor found as a fact and decreed that "the undisputed evidence showed that the defendants did not attempt to rescind the contract within a reasonable time after they knew of the alleged defect in the article sold by complainant; and upon the ground that there was no evidence in the record that the defendants returned or offered to return the machinery sold them by complainant in substantially as good condition as it was when it was sold, and upon the ground that the undisputed evidence showed that the defendant did not return or offer to return the machinery sold them by complainant at the place of sale."

No error is assigned to the action of the court with respect to any of these matters, the finding of any one of which upon undisputed testimony would have warranted the withdrawal of the issues from the jury and the entry of a decree in favor of complainant.

Let the decree of the chancellor, therefore, be in all respects affirmed at the cost of appellant and its surety.

Senter and Anderson, JJ., concur.