-ASKEW *v.* MILLS *et al.*

(*Jackson,* April Term, 1954.)

Opinion filed May 21, 1954.

Hugh G. Arnold and L. L. Fonville, both of Jackson, for petitioner.

Pigford & Key and Waldrop, Hall & Winningham, all of Jackson, for respondents.

Mr. JUSTICE TOMLINSON delivered the opinion of the Court.

When Mrs. Stedman died on April 7, 1940 she was vested with registered title to a certain residence costing $4,500. She was also in possession of promissory notes in the amount of $10,300 payable to her personally, and secured by a first lien on realty. On April 2, 1947 her daughter, Mrs. Askew, filed this bill wherein she alleged that her mother held all this property in trust for her six children. The Chancellor held that Mrs. Stedman owned the property individually, not as a trustee. It was the opinion of the Court of Appeals that Mrs. Askew's conduct deprived her of any right to set up the alleged trust; hence, that it was unnecessary to determine whether her mother originally held the property in trust. Mrs. Askew's petition for certiorari was granted.

The will of Jacob Van Hook probated in 1868 devised certain real estate to his young and unmarried daughter, Alice, to ''be vested in her, for her sole and exclusive use and benefit, and that of her children''. Alice subsequently married Stedman and became the mother of six children, one of whom is the petitioner, Mrs. Askew. In 1923 this mother sold the real estate so devised her for $22,500. The house and notes above mentioned were procured from the proceeds of that sale.

The purchaser of the property devised to Mrs. Stedman by her father required, as a condition precedent to its purchase, the signature on the deed of each of Mrs. Stedman's children. It is reasonable to conclude that this exaction was made because of the heretofore quoted language of the father's will. The great weight of the evidence—and it is clear, cogent, and convincing—is that Mrs. Stedman, in soliciting the signature of her children

to this deed, told them that by the provisions of her father's will the property was owned by them subject to an estate in her for life, and that if they would sign this deed she would so hold the proceeds of the sale or of any property obtained by a reinvestment of those proceeds. All the children did join in the conveyance.

Mrs. Askew and her huband lived with Mrs. Stedman until the latter part of 1937. From time to time during this period Mrs. Stedman, with the knowledge of Mrs. Askew, had loaned the latter's husband sums of money which added up to more than $3,500. It was never repaid. In 1937 Mrs. Stedman was forced to place a mortgage on the $4,500 home mentioned because she had a year or more prior thereto endorsed a promissory note of which Mr. and Mrs. Askew were the makers.

During the period involved Mrs. Stedman purchased two automobiles with the knowledge of Mrs. Askew. Also, with the knowledge of Mrs. Askew, she was spending each year a few hundred dollars of the purchase money received in the sale of the original property.

Mrs. Askew knew that her mother had no source of income other than what she might receive as income from the proceeds of the sale of the property devised by the Van Hook will. She knew that it was by encroachment upon the corpus of this estate that Mrs. Stedman procured the money with which to buy the automobiles and with which to lend her husband the aforesaid $3,500. She knew that while she and her brother, Jake Stedman, were living with Mrs. Stedman during this period other daughters were actually paying the taxes and keeping in force the insurance on the realty involved. Be it said in fairness to Mrs. Askew that the record justifies the conclusion that she had nothing with which to pay these taxes, insurance, etc.

Mrs. Stedman died testate in 1940. She gave most of her property, if she had any, to the aforementioned Jake Stedman. She gave Mrs. Askew $1 with the statement that this daughter had received her share of her estate.

Mrs. Askew knew that her mother had no property to bequeath or devise unless she was the owner individually of whatever might remain from the proceeds of the sale of the original property or from reinvestment of such proceeds. Notwithstanding this knowledge, she entered a contest of her mother's will in 1940. She obtained a jury verdict which was set aside by the trial court, and in 1947 she abandoned the will contest. Then it was that on April 2, 1947, after the death of her mother on April 7, 1940, she filed the present bill to establish the aforesaid alleged trust. The question is whether she is entitled under the circumstances stated to maintain this bill.

The writer of this opinion granted Mrs. Askew's petition for writ of certiorari. He was then convinced by the record, as he now is, that for the valuable consideration stated Mrs. Stedman did agree in 1923 to hold in trust for her children subject to her aforesaid life estate the proceeds of the sale of the property passing under the Van Hook will or such property as was obtained by reinvestment of such proceeds. And being of the opinion that this was one of those express trusts to which the six-year statute of limitations, Code, Section 8600, did not apply, *Jackson* v. *Dobbs,* 154 Tenn. 602, 610, 290 S. W. 402, and that the bill was sufficient to declare and enforce such trust, the writ was granted on the theory that Mrs. Askew was being charged in effect with the debts made by her husband. Such granting of the writ was improvident for the reason now to be stated.

If Mrs. Stedman made the agreement which this

record clearly shows she did make, then (1) either the trust feature of it was abandoned by the children, including Mrs. Askew, by their acquiecence in her taking title in her own name to the notes and cash and the subsequent realty and encroaching upon, with their knowledge, the corpus of this trust for the purpose of buying automobiles or satisfying her own wishes or lending money to her son-in-law, or (2) Mrs. Stedman was guilty of fraud in so spending the corpus in violation of her agreement. She did this with the full knowledge of Mrs. Askew who, it must be admitted, was benefiting by such breach of the trust agreement, though not liable for the loans to her husband. In the situation just stated, the rule of laches to the delay had here would apply. In *Samuel* v. *King,* 158 Tenn. 546, 549, 14 S. W. (2d) 963, 964, it was held with reference to laches in such a situation that:

"There would seem to be a reason sound in principle for giving to mere delay a material significance in cases of fraud, not generally applicable. Fraud vitiates every contract ab initio. He who discovers fraud perpetrated against him must act promptly, or a suspicion of connivance will attach to him as a party willing to take benefits, if time yields them, and disposed to repudiate the transaction only after experimentation. Meanwhile, his own hands have become soiled. Also, inherent difficulties, arising out of mere delay, are peculiarly incident to litigation involving fraud."

■ The Court of Appeals adjudged the costs of this case against Mrs. Askew "and her sureties". It overlooked the fact that she had no sureties, her case being prosecuted in the manner provided for the poor. Moreover, the circumstances of the case seem to invoke the

exercise by the Court of the discretion provided by Code Section 9115 in adjudging the costs of this appeal. The decree of the Court of Appeals will be modified so as to adjudge the costs of the appeal against the administrator of Mrs. Stedman's estate. As so modified, and for the reasons heretofore stated, the decree of the Court of Appeals will be affirmed.