Turney. J.,
delivered the opinion of the Court.
The decree of the Chancellor is erroneous. The complainant filed his bill in the Chancery Court at Knoxville, seeking to enjoin the collection of a note for two hundred - dollars, 'executed by complainant and defendant, David Owens, in May, 1865, and further seeking to have said note declared void and delivered up to-be cancelled, alleging duress of both makers at the. time of the execution of the note.
The facts are, that in May, 1865, and on the night of the day on which David Owens reached the house of complainant, his father, on his return from the Confederate army, defendant, H. L. C. Mynatt, (called Clinton,) in company with two of his- brothers, at a late hour, went to the house of complainant, and inquired for David Owens, who was- in bed up stairs;- or, as some of the witnesses expressed it, in the loft. They entered the house with pistols in their hands. Complain *677 ant was also in bed. One of the party went into bis room; the other two went up stairs. David Owens, finding out they were there, and coming up with arms in their hands, called to them to lay down their arms and he .would meet them friendly. They told him they would not lay down their arms. They went up to his room with ]5istols; told him to get up or they would make him; that they had . a settlement to make with him; that he had taken two of Clinton’s horses, and they wanted pay for them, and if he didn’t pay for them they would take him off. He told them he had not taken the horses, and knew nothing about them. They continued then to threaten until he agreed to give his note. The complainant, to prevent their carrying his son off and killing him, as he reasonably feared they would, became security on the note to Clinton. The Mynatts were at the house of complainant, aggravating their outrage, for several hours. David left the next morning, and has not returned.
The Chancellor held this conduct to be no duress of the father, and intensified the error of this holding, by further declaring, the duress of the son was no defense for the father as security upon the note of the same. If this were so, the payee could sue and recover from the security; then the security might take his judgment against the principal, and thus duress, however terrible, would be in the end avoided as a defense.
The proof shows the Mynatts to live in sight of complainant’s house. Complainant and his son were actually imprisoned, and secured in that imprisonment by arms, exhibited by those men whose conduct at the time *678 is most ruffian-like, arid for a purpose unlawful, if not felonious.
There is evinced in the record a vileness of principle, not only sufficient to put in fear the persons against whom it is immediately aimed, but of which the community in which it exists may entertain well-founded apprehensions. This conclusion is made manifestly correct by the fact that defendant, Mynatt, not only fails to prove, or even propose to prove, that David Owens or any one else took his horses, but strangely enough, fails to prove that he ever lost a horse at all.
Reverse the decree, let the note be delivered up, and the injunction made perpetual.