MAYOR AND CITY COUNCIL OF NASHVILLE *v.* SINGER &
JOHNSON FERTILIZER COMPANY *et al.*

'(*Nashville.*   December Term, 1912.)|

1. **DEMURRERS.** Bill taken as true on demurrer to it.
The allegations of the bill must be taken as true when the case
stands on bill and demurrer.   (*Post, p.* 110.)

2. **MUNICIPAL CORPORATIONS.** Duty to keep streets un-
obstructed cannot be delegated so as to escape responsi-
bility.

A municipality cannot escape responsibility for an improper exer-
cise of its duty to keep its streets and alleys unobstructed by a
delegation thereof.   (*Post*, p. 112.)

Cases cited and approved:   White v. Nashville, 2 Swan, 364; Mem-
phis v. Adams, 9 Heisk., 523, 524; McHarge v. Newcomer, 117
Tenn., 604.

3. **SAME.** Contract to remove dead bodies from streets, and for
failure to pay a fixed sum as liquidated damages, does not in-
demnify city against damages resulting therefrom, when.

Where the defendant's contract with the complainant city to re-
move the carcasses of dead animals from the streets and alleys
stipulated that, upon his failure to remove any dead body within
six hours after notice, he should forfeit and pay to the city five
dollars as liquidated damages, and he did neglect and fail to re-
move the carcass of a horse; and, some twelve or thirteen hours
after the expiration of the six hours, a traveler's horse, attached
to a vehicle, became frightened at the carcass and injured him,
and he recovered damages against the city, it is *held* that the
city's negligence in its primary and nondelegable duty to keep
the streets clean and to remove the carcass within a reasonable
time after the death of the horse was the proximate cause of the
injury, and the city could not recover over against defendant
and the surety on his bond for breach of contract, because said

contract stipulated liquidated damages for said breach, and did
not stipulate to indemnify the city against loss and damages
sustained by it on account of said breach. (*Post, pp,* 110-112,
113, 114, 115, 116.)

4. PROXIMATE CAUSE.   Act or omission which immediately
causes or fails to prevent the injury.

The "proximate cause" of an injury may, in general, be stated to
be that act or omission which immediately causes or fails to
prevent the injury; an act or omission occurring or concurring
with another, where, had it not happened, the injury would not
have been inflicted. (*Post, pp.* 114, 115.)

Cases cited and approved: Deming v. Cotton-Press Co., 90 Tenn.,
353; Railroad v. Kelly, 91 Tenn., 699; Telegraph Co. v. Zopfi,
93 Tenn., 369; Anderson v. Miller, 96 Tenn., 35; Light & Power
Co. v. Hodges, 109 Tenn., 338; Pencil Co. v. Railroad, 124 Tenn.,
71.

5. CHANCERY PLEADING AND PRACTICE.   Bill to recover
over against defendant for damages recovered from city for
his breach of contract does not warrant recovery of liquidated
damages stipulated for.

Where the defendant breached his contract by his failure to
remove a dead horse from the street, and the city was com-
pelled to pay damages to one whose horse injured him from
fright at the carcass so left in the street, and the city brought
suit to recover over against defendant for such breach, but such
recovery was refused, it could not then recover the liquidated
damages of five dollars stipulated in the contract, because the
bill was not framed for such recovery. (*Post, pp.* 109, 110,
116, 117.)

6. PRINCIPAL AND SURETY.   Obligation of surety is very
strict, and he is not liable where his principal is not.

It is axiomatic and fundamental that the obligation of a surety
is very strict, and cannot be extended beyond the limits of his
engagement, so that where the obligee in a bond shows no right
of recovery against the principal on his contract, there can be
no recovery against the surety. (*Post, pp,* 109, 110, 116, 117.

Cases cited and approved: Cross v. Scarboro, 6 Bax., 136; Hardi-
son v. Yeaman, 115 Tenn., 639.

FROM DAVIDSON.

Appeal from the Chancery Court of Davidson County.—JOHN ALLISON, Chancellor.

A. G. EWING, JR., City Attorney, and FRANK GARARD, Assistant City Attorney, for complainant.

PITTS & McCONNICO, F. M. BASS, and W. L. TALLEY, for defendants.

MR. JUSTICE BUCHANAN delivered the opinion of the Court.

This is a suit for damages based on an alleged breach of contract, and seeks to fasten liability upon the Singer & Johnson Fertilizer Company as principal, and upon the other defendant as surety. Each of defendants demurred to the bill. The chancellor sustained the demurrers, and dismissed the bill at complainant's cost; and it has appealed and assigned errors.

By the contract sued on, the principal became bound co remove dead horses, and other animals therein enumerated, from the streets and alleys of the city of Nashville within a time certain after notice; and, being so bound and after notice, the principal failed to remove a certain dead horse from one of the streets within the time required by the contract, with the result that a horse, quite alive, but said to be gentle, and attached

to a vehicle, became frightened by the carcass, over-turned the vehicle, and so injured the occupants that they brought suit against the city and recovered judgment for $1,487.17, which sum the city, after exhausting its legal defenses was bound to, and did, pay; and for this sum it brings this suit.

It says it is entitled to recover against the principal defendant because the failure of that defendant to remove the carcass within the time required by the contract was the proximate cause of the injury and the resulting loss, and that it is entitled to recover against the surety company because the latter signed a bond as surety for the principal, under the terms of which the surety company is liable to the city upon default of the principal.

Accepting as true the averments of the bill (as we must when the case stands on bill and demurrer), it is clear that the principal defendant breached the contract between it and the city by failing to remove the carcass from the street within six hours after notice. This much it concedes. It is also clear that, if it had not so breached the contract, the injury and the consequent loss to the city would have been averted. But it also appears that the injury did not occur during the six hours after notice within which the principal defendant was bound to remove the carcass, nor even a short time thereafter. The injury occurred some twelve or thirteen hours after the expiration of the six hours. And by the terms of the contract between the city and the principal defendant it was stipulated that, in the event of failure

by that defendant to remove any carcass within six hours after notice, it should forfeit to, and pay, the city the sum of $5 as liquidated damages.

The contract does not in express terms bind the principal defendant to pay any loss which the city may sustain by reason of the failure of that defendant to remove any carcass within the six hours after notice. But it was clearly within the contemplation of the parties that, in such event, the city would remove the carcass and collect the liquidated damages therefor. By such a construction of the contract, and such a discharge of its nondelegable duty to the public to keep its streets in safe and sanitary condition, the city would have been compensated for the proximate consequences of the breach of the contract by the principal defendant, and also have averted the injury and loss which it sustained by its failure to so construe its contract and discharge its public duty.

So it comes to this: The city by this suit says to the principal defendant: "You are liable to me for the sum sued for. Your breach of your contract caused the injury and resulting loss to me." To which that defendant replies: "No, my breach of the contract only caused you a loss of $5, the liquidated damages agreed on between us when we made the contract. The loss for which you sue me was caused by your misconstruction of your contract rights, and your negligent failure to discharge your duty to the public by removal of the carcass during the thirteen hours which intervened between my breach of the contract and the time of the

injury. If the injury had occurred so short a time after my breach of the contract was complete that you could not justly be charged with negligence in failing to remove the carcass within that short time, then my negligence would have been that proximate to the injury and proximate to your loss. But such are not the facts set up in your bill. By it, your negligence clearly appears. It intervened between my negligence and the injury. Therefore your negligence supplanted mine, and was the proximate cause of the injury and your resulting loss."

Can it be doubted which of these parties has the better of this argument? We think the right of it is clearly with the defendant.

The power and duty vested by the legislature in a municipal corporation over and concerning the streets and alleys of a city or town is in trust for the benefit of the citizens thereof, and must be exercised by those upon whom it is conferred, or under their express direction; the municipality cannot escape responsibility for an improper exercise of such power, or discharge of such duty, by delegation thereof. *While v. Mayor & Aldermen of Nashville*, 2 Swan, 364; *City of Memphis* v. *Adams et al.*, 9 Heisk., 523, 524, 24 Am. Rep., 331; *McHarge* v. *Newcomer*, 117 Tenn., 604, 100 S. W., 700, 9 L. R. A. (N. S.), 298.

Mr. Thompson, in his Commentaries on the Law of Negligence (volume 1), observes as follows on this subject:

"Where there is a public duty resting upon a corporation, it cannot discharge this duty by any agreement

which it may make with the undertaker of the work." Section 651.

In section 532 it is said:

Where the master commits to one of his servants, or to an independent contractor, or to an agent or undertaker of work, selected by the master, the performance of any absolute duty which the master owes to his own servant, or to others, whether that duty is assumed by contract or arises by operation of law, the master makes such person his *alter ego* or vice principal, and becomes responsible for his failure to perform that duty."

"But when applied to municipal corporations, the rule is subject to the qualification that such corporations are under the absolute duty of exercising reasonable care to the end that their streets and sidewalks are kept free from nuisances, and safe for the public travel; and it is obvious that they are just as much bound for the prevention or removal of obstructions, pitfalls, or other nuisances placed there by their own contractors as when they are placed there by mere passengers." See section 663.

The primary nondelegable legal duty was upon the city to remove the carcass within a reasonable time after the death of the horse, and, as between the city and the public, that duty never shifted. The contract did not affect it. The duty of the city to the public was alive and operative prior to the breach of the contract and after its breach, and at the time of the injury.

Each moment it was left undischarged after the lapse of a reasonable time from the death increased the degree of the negligence of the city. It is not necessary to decide here whether the six hours fixed by the contract was a reasonable time to allow the carcass to remain upon the street. The only question we are called upon here to decide is whether the city was negligent in the discharge of its duty in failing, under the circumstances of this case, to remove the carcass before the injury. We think it was negligent, and that its negligence was the proximate cause of the injury and the loss for which it sues in this case.

This court has thus defined "proximate cause":

"The 'proximate cause' of an injury may, in general, be stated to be that act or omission which immediately causes or fails to prevent the injury; an act or omission occurring or concurring with another, which, had it not happened, the injury would not have been inflicted." *Deming* v. *Cotton Press Co.*, 90 Tenn., 353, 17 S. W., 99, 13 L. R. A., 518.

The definition above given was approved in *Telegraph Co.* v. *Zopfi,* 93 Tenn., 369, 24 S. W., 633; *Railroad Co.* v. *Kelly,* 91 Tenn., 699, 20 S. W., 312, 17 L. R. A., 691, 30 Am. St. Rep., 902; *Anderson* v. *Miller,* 96 Tenn., 35, 33 S. W., 615, 31 L. R. A., 604, 54 Am. St. Rep., 812; *Chattanooga Light & Power Co.* v. *Hodges,* 109 Tenn., 338, 70 S. W., 616, 60 L. R. A., 459, 97 Am. St. Rep., 844.

In a case where a shipper sued a railroad company for the value of a carload of material which was

destroyed by fire while standing on a siding near the warehouse of the complainant where the car had been placed in order that it might be loaded, it appeared that the fire which destroyed the car was traceable directly to the negligent act of one of complainant's employees, and it was there held that complainant could not recover, although the loss might have been averted but for the delay in the shipment or movement of the car from the siding by the defendant railroad company upon the ground that the negligent act of the shipper in respect to the billing of the property for shipment and the origin of the fire was the proximate cause of his own misfortune and loss. *American Lead Pencil Co.* v. *N. C. & St. L. Ry. Co.,* 124 Tenn., 71, 134 S. W., 613, 32 L. R. A. (N. S.), 326, and see authorities therein cited.

The argument for complainant in this case proceeds upon the mistaken theory that the breach of the contract by the principal defendant was the proximate cause of the injury and the loss which followed it; and so it is insisted for complainant upon that theory that, although the contract does not in terms bind the principal defendant to pay any loss which the city may sustain by reason of the failure of that defendant to remove any carcass within six hours after notice, yet, by a fair and reasonable construction of the contract, the principal defendant would be so bound. A solution of this question, however, in the view which we have taken of the case, would be purely academic, as is also the question whether or not the contract, as written,

would support the recovery claimed in this suit, if the bill showed a case where there was no negligence of the city intervening between the breach of the contract and the injury and loss as the proximate cause thereof

It is entirely clear to us that, whatever may have been within the contemplation of the parties at the time of the making of this contract as to the liability of the principal defendant for damages which might be sus tained by the city beyond the liquidated damages fixed by the contract for its failure to remove each carcass where such damages were proximately caused by the breach of the contract by the principal defendant, i certainly was not within the contemplation of the par ties, as we read the contract, that the principal defend ant should be liable to the city for damages proximately caused by the negligence of the city in failing to dis charge its public duty after a breach of the contract by the principal defendant.

Manifestly a correct construction of the contrac upon the last proposition is that it was the intention of the parties to bind the principal defendant to remov each carcass within six hours after notice, and, upon it failure so to do, that it would forfeit and pay to th city the sum of $5 as liquidated damages; whereupo the city would collect its liquidated damages and dis charge its public duty by removal of the carcass withi a reasonable time, and by some other agency.

Under the averments of the bill, no decree can g against the defendant principal. The bill is not frame for a recovery of the liquidated damages. There ca

of course, be no recovery against the defendant surety. His engagement is to answer for the default of his principal. And it has been said by this court that:

"It is axiomatic and fundamental that the obligation of a surety is *strictissimi juris,* and cannot be extended beyond the limits of his engagement." *Cross* v. *Scarboro,* 6 Baxt., 136; *Hardison* v. *Yeaman,* 115 Tenn., 639, 91 S. W., 1111.

From what has been said it results that the decree of the chancellor will be affirmed, with costs.