In the Matter of the ESTATE of Charles
B. DARWIN, Deceased.

Supreme Court of Tennessee.

Nov. 5, 1973.

**512**

W. W. Berry, Bass, Berry & Sims, Nashville, for the Estate.

David M. Pack, Atty. Gen., State of Tennessee, William B. Hubbard, Asst. Atty. Gen., Nashville, for the State.

## OPINION

LEECH, Special Justice.

G. B. Hillis, principal, and Charles B. Darwin, one of three sureties, executed a bond in accord with T.C.A. § 57–309 to the Commissioner of Revenue to cover taxes accruing from the wholesaling of beer, ale, and other malt beverages. The bond was executed on October 19, 1963 and provided that an action could be maintained on the bond against any one or all of the sureties without making the principal a party, they both being liable jointly and severally. Charles Darwin, subsequently died on February 6, 1964 and publication of a notice to creditors was instituted on February 19, 1964. On December 8, 1965, the Commissioner of Revenue brought a claim against Charles B. Darwin's estate pursuant to the aforementioned bond in the amount of $2,871.87. Executors of Darwin's estate contended that the claim was not filed within the nine months statute of limitations as outlined in T.C.A. § 30–513, therefore they took exception to it.

This issue was heard by the Probate Court on May 8, 1973. The court held that the claim was for a debt arising under a contract rather than for taxes, therefore T.C.A. § 30–513 barred the claim as it was filed subsequent to the expiration of the nine months limitation.

On appeal, the sole question raised by the parties is whether the State of Tennessee, by filing this claim against the estate of Charles B. Darwin is acting in its sovereign capacity or is acting as an individual in a proprietary capacity. However, the resolution of this issue is not controlling. Assuming *arguendo* that the State was acting in its sovereign capacity, that fact alone would not prevent the statute of limitations from barring the State's claim if the statute is expressly applicable to the State. Thus, any discussion of the foregoing issue would be less than helpful.

The finely drawn issue is whether T.C.A. § 30–513 bars the State's claim or

whether another statute of limitations is applicable. T.C.A. § 30–513 provides in pertinent part that:

"All claims and demands not filed with the county or probate clerk. . . . . before the end of nine (9) months (now six months) from the date of the notice to creditors shall be forever barred."

■ This Court has consistently held that the State is not barred by any statute of limitations unless the particular statute expressly so provides. *See, e. g.,* Commerce Union Bank v. Gillespie, 178 Tenn. 179, 194, 156 S.W.2d 425 (1940). Having examined T.C.A. § 30–513, it is clear that there is neither an express nor even an implied inclusion of the State within the statute's boundaries. It necessarily follows therefore, that T.C.A. § 30–513 is not a bar to the State's claim in the instant case.

The question remains, however, whether any statute of limitation is applicable to the State's claim. This question can be answered by ascertaining whether the claim is that of a tax or that for a debt owed.

To properly ascertain the answer to the latter question, we can first look to the bond itself. The bond clearly specifies that:

"If the said . . . Principal, shall well and truly comply with all of said laws and rules and regulations in pursuance thereto with reference to the *tax levied* under said law . . . . . then this obligation shall be void . . ." (Emphasis added).

Moreover, T.C.A. § 57–309 specifies that this claim is that of a privilege tax. It is clear beyond dispute, therefore, that the State's claim was that of a tax as between the State and the Principal, C. B. Hillis.

■ It is equally clear from our previous holdings that a surety stands in the shoes of the principal. *See, e. g.,* City of Nashville v. Singer & Johnson Fertilizer Co., 127 Tenn. 107, 153 S.W. 838 (1913); Owens v. Mynatt, 48 Tenn. 675 (1870).

This being true, a privilege tax to the principal is also a privilege tax to the surety. In addition, the surety agreement itself, when speaking of the obligations of the sureties, succinctly states:

"That this obligation shall extend to a *failure to pay tax* . . . . levied under Section 57–309 Tennessee Code Annotated." (Emphasis added).

We therefore conclude that the State's claim is that of a tax and not for a debt owed.

■ Having determined that the State's claim is that of a tax, it is clear that T.C.A. § 67–1323 is the appropriate statute of limitation applicable to this situation. This section of the Code provides that:

"All state, county, school and municipal taxes assessed on property, and all state, county, or municipal *privilege taxes,* shall be barred . . . unless the same are collected, or suit for the collection shall have been instituted within six (6) years . . . (Emphasis added).

Applying this section to the facts of the instant case, it is clear that the six year statute of limitations would not bar the State's claim. This result necessarily follows because suit was filed within six years from the date the taxes became delinquent.

In conclusion, this Court holds that the State's claim is that of a tax and that such is only barred by the six year statute of limitation, T.C.A. § 67–1323. We also conclude that T.C.A. § 30–513 does not bar the State's claim as the words of the statute do not expressly include the State. *See,* Commerce Union Bank v. Gillespie, supra.

Having reached this conclusion, it would appear that nothing further need be considered by this Court. However, there remain two issues which were not raised by either party on appeal which were raised in the Probate Court but were pretermitted. These two issues must be considered to properly resolve this case.

First, although the State's claim is not barred by the statute of limitation, the question remains whether the State is equitably estopped from collecting from Darwin's estate because of laches.

■ This Court has consistently held that laches may be invoked only when there is negligence on one side resulting in injury therefrom on the other. *See,* Samuel v. King, 158 Tenn. 546, 14 S.W.2d 963 (1928); State v. McPhail, 156 Tenn. 459, 2 S.W.2d 413 (1916); Evans v. Steele, 125 Tenn. 483, 495, 145 S.W. 162 (1911). Moreover, mere delay is insufficient to raise the doctrine of laches. But, in Nicholson v. Holt, 174 Tenn. 358, 366, 125 S.W.2d 483, 486 (1939), this Court indicated that:

"The doctrine of laches . . . is not an arbitrary . or technical doctrine. Where it would be practically unjust to give a remedy, either because the party has, by his conduct, done that which might fairly be regarded as equivalent to a waiver of it, or where, by his conduct and neglect, he has, perhaps, not waiving that remedy, yet put the other party in a situation in which it would not be reasonable to place him if the remedy were afterward to be asserted, in either of these cases, lapse of time is most material."

This Court continues to adhere to these equitable principles.

■ In the instant case, however, the facts are insufficient to allow an accurate determination of whether to apply these principles. It results therefore, that this issue must be remanded to the Probate Court to determine whether the nearly eight year delay was caused by the State and whether Darwin's estate was injured or placed in an unreasonable position by the delay.

The second question remaining to be answered is whether Darwin's death revoked the surety agreement or whether it remained binding upon his estate after his death. This question is unique and one of first impression in Tennessee.

■ At common law, where the surety was jointly liable with the principal, the death of the surety revoked the surety agreement and the surety's estate had no liability either as to past or future defaults. *See generally,* A. Sterns, Law of Suretyship, § 7.24 (5th ed. 1951). Today however, the general rule is contra.

■ The general rule is stated in United States v. Chain, 300 U.S. 31, 57 S.Ct. 394, 81 L.Ed. 487 (1937), in which the Court held that the liability of a surety is not discharged by his death. The Court reasoned that the rules of contract controlled and "parties to a contract bind not only themselves but their personal representatives," therefore, the executor is bound as if the decedent surety were yet living. It has also been held that this result follows even though the surety agreement itself did not purport to bind the estate. *See, e. g.,* Thommen v. Aldine Trust Co., 302 Pa. 409, 153 A. 750 (1931). This Court too adopts the general rule as stated in United States v. Chain, supra.

■ However, the aforementioned general rule has several exceptions. First, if the surety agreement can be revoked by notice, before liability accrues, then the surety's death serves as constructive notice thereby revoking the agreement. *See generally,* Nielsen v. Davidson, 66 Cal.App. 442, 226 P. 835 (1924); Clark v. Anderson, 123 Me. 165, 122 A. 337 (1923). In the instant case, the surety agreement specifies:

"That a cancellation . . . of this obligation shall not become effective for a period of thirty days after notice of intention to cancel shall have been given. . . ."

Thus, the sureties could revoke the agreement at any time, if thirty days prior notice were given. Here, Darwin's death was constructive notice of revocation, therefore, his estate cannot be liable for any delinquent tax under the surety agree-

ment accruing more than thirty days after his death.

The second exception to the aforementioned general rule is that where the contract is executory and the obligation is not binding upon the surety until acted upon by the creditor, the surety's death prior to the creditors acting upon the contract serves to revoke the agreement. *See generally,* A. Sterns, Law of Suretyship, § 7.-24 (5th ed. 1951). The surety agreement here was executory, therefore, Darwin's death was constructive notice of his revocation of the surety agreement. This being so, the State cannot recover any delinquent taxes from Darwin's estate that accrued more than thirty days subsequent to his death.

■ The adoption of the general rule and the two exceptions previously discussed may seem to place a burden on the State, however, in this case the State is best able to carry that burden. Moreover, to hold otherwise would cause needless delay in the proper and speedy disposition of decedent's estate. For example, if this Court failed to adopt the above rules, Darwin's estate could be liable under the surety agreement for delinquent taxes accruing years after his death. It is clear that this Court cannot sanction such delay in the closing of estates. In addition, if the State desired to protect itself further, the surety agreement could have been drawn to require the principal to acquire a new surety to replace the decedent within thirty days of the decedent's death. This would eliminate any hiatus period, thereby insuring that all delinquent taxes could be collected. Moreover, if the State desired to protect itself fully, it could include in the surety agreement a clause binding the surety's heirs, devisees, and personal representatives. However, in those instances where the surety agreement is not executory; where the parties to the agreement, by contract, cannot revoke the surety agreement; or where the surety contract purports to bind the heirs, devisees, and personal representatives; the surety's estate will be liable for debts accruing subsequent to the surety's death.

■ Although the general rule is practically devoured by the two exceptions, we adopt the general rule and its exceptions as the law in Tennessee. Thus, it necessarily follows that this issue too must be remanded to the Probate Court for a determination of when the delinquent taxes actually accrued. Therefore, under our holding in this case, Darwin's estate will be liable, unless laches prohibits, for all delinquent taxes accruing prior to thirty days following his death. As to any taxes accruing more than thirty days after his death, however, his estate will not be liable regardless of whether the State is guilty of laches.

Thus, in view of all the facts here involved, we hold that the Probate Court erred. We therefore reverse the Probate Court's holding and remand for a hearing consistent with the holding in this opinion.

DYER, C. J., and CHATTIN, McCANLESS and FONES, JJ., concur.

## OPINION ON PETITION TO REHEAR

LEECH, Special Justice.

The State has filed a petition to rehear in this case questioning that portion of the original opinion wherein we remanded the cause to the Probate Court of Putnam County to determine in part whether the plea of laches which was pretermitted in that court can be applied. We are not holding that laches will or will not apply in this case because the lower court has not yet made a factual determination as to laches on the facts. We have, in essence, merely restated what Mr. Justice Humphreys said in Cox v. State, 222 Tenn. 606, 439 S.W.2d 267 (1969) that:

> "[T]he general principal of the application of the doctrine of laches to the State may be subject to further consideration in a case strongly calling for it . . . ."

Moreover, in Robinson v. Bierce, 102 Tenn. 428, 438, 52 S.W. 992, this Court said:

"We know of no rule of sovereignty or divinity which hedges a tax suit with immunity from the rules of equity and practice which control other suits."

This language was also quoted with approval in State ex rel. v. Patterson, 155 Tenn. 169, 290 S.W. 973.

We cannot pass upon the question of whether the plea of laches in this case would be applicable until there has been a factual determination in the trial court.

Petition to rehear is denied.

DYER, C. J., and CHATTIN, McCANLESS and FONES, JJ., concur.