**SOUTHERN ELECTRICAL RETIREMENT FUND by its Trustees, and International Brotherhood of Electrical Workers Local Union 175, Plaintiffs,**

v.

**GEORGE ARP ELECTRICAL CORPORATION, a Tennessee corporation, Defendant.**

**Civ. No. 1–85–429.**

United States District Court, E.D. Tennessee, S.D.

April 15, 1986.

S. Del Fuston, Chattanooga, Tenn., for plaintiffs.

Frank Pinchak, Hutcheson, Moseley, Pinchak & Powers, Chattanooga, Tenn., for defendant.

## MEMORANDUM

EDGAR, District Judge.

This is a suit brought by the trustees of a retirement fund and a local union against an employer for delinquent fund contributions which are claimed to be due the fund pursuant to a collective bargaining agreement and 29 U.S.C. § 1145, a provision of the Employment Retirement Income Security Act ("ERISA").

George W. Arp d/b/a George W. Arp Electric Company did business as an electrical contractor as an individual for many years and until May 1, 1985, when he incorporated his business. By stipulation of the parties both Mr. Arp as an individual, and his corporation, are party defendants in this case. Both Mr. Arp individually and his corporation shall be sometimes referred to herein as "Arp."

Arp at all times material hereto designated the East Tennessee Chapter—National Electrical Contractors Association ("NECA") as its collective bargaining representative for the purpose of bargaining with and entering into a collective bargaining agreement with Local 175, International Brotherhood of Electrical Workers. The current version of that agreement is an "inside construction agreement" which was amended and revised in May, 1985. Since the provisions of the current agreement and provisions in preceding agreements are essentially the same as they relate to the merits of this case, the current collective bargaining agreement and its predecessors will herein be referred to collectively as the "Agreement."

Pursuant to the Agreement, Arp and other employers party to the Agreement are required to pay a specified percentage of employees' wages to various funds. Among these funds are the Southern Electrical Retirement Fund ("SERF") and the Southern Electrical Health Fund ("SEHF"). SERF is a defined contribution fund governed by the terms of the ERISA.

In 1978 Arp wanted to hire an electrician. He contacted Mr. Edward Harvey, who at that time was a business agent for Local 175. Because employment was then high in the Chattanooga area, the Union was unable to find an electrician to refer to Arp under the Agreement. Arp told Harvey that he knew of someone that he wanted to

hire. This person was Harold W. Wilson. Mr. Arp sent Mr. Wilson to the union hall, and Wilson was referred to Arp by the Union under the referral provisions of the Agreement.

Mr. Wilson went to work for Arp and has performed essentially as a journeyman electrician, although he has never gone through Local 175's four-year apprenticeship program, normally a prerequisite for journeyman status. Wilson did, however, have considerable training as an electrician in the United States Air Force and with a prior employer before being hired by Arp. Wilson has also taken a number of electrical courses at Chattanooga State Technical Institute during the time he has been employed by Arp.

Wilson, who never joined the Union, was paid under the terms of the Agreement as a journeyman with one exception. That exception is that Arp made no payments to SERF on Wilson's behalf. Arp did, however, make payments to SEHF for Wilson who thereby obtained health insurance coverage. Neither the Union nor the administrators of SERF became aware of the lack of SERF contributions for Wilson until 1985.

SERF and Local 175 have brought this suit to collect from Arp all SERF contributions which they claim Arp should have made since Wilson was employed by Arp in 1978.

## I. INTERPRETATION OF THE AGREEMENT

■ Arp contends that it has never been required to make SERF contributions for Wilson because Wilson is really an "unindentured apprentice" under the terms of a side "letter of understanding" between Local 175 and NECA which established a minimum rate of pay for "unindentured apprentices and school letter helpers," and which did not require SERF contributions for those employees. However, it is apparent that this side letter of understanding was for the purpose of covering helper-type employees who do relatively menial work and temporary employees such as college students where permanent retirement benefits are not crucial. The side letter was not intended to cover fulltime skilled electricians such as Mr. Wilson.

■ Mr. Arp also contends that he relied on a statement allegedly made to him by Mr. Richard Stillwell, who was assistant chapter manager of NECA and, only incidentally one of several trustees of SERF, to the effect that Arp need pay "no pension on anyone that was unindentured." It appears to the Court that Mr. Arp dealt with Mr. Stillwell in Mr. Stillwell's capacity as a representative of NECA, and not as a representative of SERF. In any event, Stillwell's statement is somewhat ambiguous in its application to Mr. Wilson who, while "unindentured," was a de facto journeyman electrician. This statement by Stillwell cannot be considered a modification of the Agreement. In determining why Arp did not make SERF contributions for Wilson, the Court finds more meaningful the statements of Mrs. Arp who plays some role in the management of Arp's business. She has said that Arp did not make SERF contributions for Wilson because he was not a member of the Union. Wilson himself says that the reason he did not think he was entitled to SERF benefits was because he was nonunion.

■ The collective bargaining agreement contains a standard "recognition" clause whereby the employer recognizes the Union as "... the sole and exclusive representative of *all* of its employees performing work within the jurisdiction of the Union...." (§ 2.07(a) of the Agreement) (emphasis supplied). Thus, both union and nonunion employees are covered by the Agreement.

Article III of the Agreement requires the employer to make SERF contributions for employees. Among the job classifications mentioned in this article of the Agreement are apprentices, journeymen and foremen. However, the Agreement does not provide, as defendant contends, that SERF contributions need be made only for employees who have graduated from a Department of Labor approved union sponsored apprentice

program. In fact, the Agreement does not limit the employer's obligation to make SERF contributions to employees of any particular job classifications. Article III simply provides that SERF contributions are to be "8% of gross wages."

In any event, this Court concludes that Mr. Wilson has been and is essentially a journeyman electrician, and the Agreement requires Arp to make SERF fund payments on Wilson's behalf. Wilson's nonunion status affects neither Arp's obligation to make SERF contributions for him, nor his entitlement to those benefits. *See Teamsters Local 348 Health & Welfare Fund v. Kohn Beverage Co.*, 749 F.2d 315, 318 (6th Cir.1984), *cert. denied*, —— U.S. ——, 105 S.Ct. 2024, 85 L.Ed.2d 305 (1985).

## II. ARBITRATION

This suit was brought by both the trustees of SERF and by Local Union 175. Arp contends that this suit must be dismissed because the plaintiffs have failed to utilize the arbitration provisions in the Agreement. In *Schneider Moving & Storage Co. v. Robbins*, 466 U.S. 364, 104 S.Ct. 1844, 80 L.Ed.2d 366 (1984), the United States Supreme Court held that trustees of multi-employer trusts could institute suit as third-party beneficiaries to collect fund contributions from employers without first submitting to contractual arbitration, even though the suit could raise questions of contract interpretation. *Id.* at 371–72, 104 S.Ct. at 1849, 80 L.Ed.2d at 373. It is, therefore, clear that this case cannot be dismissed on these grounds as to plaintiff SERF.

While Local 175 has also been made a party plaintiff in this case, the gravamen of the suit is a collection action against Arp for SERF contributions. Although Local 175's presence in this case is merely incidental, there is no reason why Local 175 must be dismissed as a plaintiff given the nature of this case. The steelworkers' trilogy[1] presumption of arbitrability does not apply here. *Schneider*, at 371–72, 104 S.Ct. at 1849, 80 L.Ed.2d at 373.

## III. STATUTE OF LIMITATIONS

The plaintiffs contend that Tennessee's six-year statute of limitations, T.C.A. § 28–3–109, should be applied to plaintiffs' cause of action. The defendant urges this Court to apply the six-month statute contained in § 10(b) of the Taft-Hartley Act on the authority of *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983).

*DelCostello* decided that the six-month statute is to be used in hybrid fair representation cases. However, the Court stressed that its holding did not mean that the often utilized practice of borrowing statutes of limitations for federal causes of action was eliminated. 462 U.S. at 171, 103 S.Ct. at 2294. In *Carruthers Ready-Mix, Inc. v. Cement Masons Local Union*, 779 F.2d 320 (6th Cir.1985), the Sixth Circuit recently noted that:

Attention to the reasoning of *DelCostello* and its own express limitations indicate that *DelCostello* is not a "green light" to apply 29 U.S.C. § 160(b) to all actions in which federal labor law is implicated.

779 F.2d at 327. In *Carruthers Ready-Mix*, the Sixth Circuit adopted the Tennessee three-year statute of limitations for inducement of breach of contract to a claim under § 303 of Taft-Hartley (29 U.S.C. § 187) because the state cause of action was closely analogous to the § 303 action. *Id.*

In *Champion International Corp. v. United Paperworkers Int'l Union*, 779 F.2d 328 (6th Cir.1985), a decision issued on the same date as *Carruthers*, the Sixth Circuit also narrowly construed *DelCostello* and applied a Tennessee statute of limi-

---

**1.** *See Steelworkers v. American Manufacturing Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); and *Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

tations to a claim brought under § 301 of Taft-Hartley seeking to vacate an arbitration award. Thus, the Sixth Circuit has continued to emphasize the general rule that statutes of limitations be borrowed from similar state statutes.

■ The instant case is essentially a suit for breach of contract. It seeks delinquent contributions which are owed pursuant to 29 U.S.C. § 1145, a provision of ERISA. A suit brought under ERISA for wrongful denial of pension benefits is governed by the Tennessee six-year statute of limitations for contracts. *Haynes v. O'Connell*, 599 F.Supp. 59 (E.D.Tenn.1984). The Court in *Haynes* recognized that claims for benefits under ERISA are more analogous to contract claims than unfair labor practice claims, and that the federal policy to protect the interest of participants in employee benefit plans would not be served by a shorter statute of limitations. 599 F.Supp. at 62.

■ Since the gravamen of the claim in the instant case is a breach of contract seeking to protect the interest of a participant in an employer benefit plan, the Court concludes that the Tennessee six-year statute of limitations embodied in T.C.A. § 28–3–109 is applicable here.

■ The plaintiffs brought this case on July 3, 1985. Mr. Wilson began working for Arp in October 1978. No contributions were ever made for Arp to SERF. The Agreement was breached each time that Arp failed to make a contribution. Therefore, applying the six-year statute of limitations, Arp owes SERF the SERF contributions which accrued on and after July 3, 1979. *Stone v. Halsell*, 648 S.W.2d 949 (Tenn.Ct.App.1982), permission to appeal denied by Tennessee Supreme Court March 14, 1983. The Court calculates this accrued amount of the SERF contributions at $11,-827.70.

## IV. LACHES

■ Arp contends that SERF's claim is barred by laches. Laches is an equitable doctrine by which a plaintiff's claim may be denied where no explanation is given for unreasonable and injurious delay. 27 Am. Jur.2d *Equity* § 153. Although this is not a diversity case in which the Court is required to look to state law, it appears that the decisions of Tennessee courts have outlined the generally accepted elements of laches. In *Nicholson v. Holt*, 174 Tenn. 358, 125 S.W.2d 483 (1939), it was said:

> The doctrine of laches ... is not an arbitrary or technical doctrine. Where it would be practically unjust to give a remedy, either because the party has, by his conduct, done that which might fairly be regarded as equivalent to a waiver of it, or where, by his conduct and neglect, he has, perhaps, not waiving that remedy, yet put the other party in a situation in which it would not be reasonable to place him if the remedy were afterward to be asserted, in either of these cases, lapse of time is most material. [cite omitted].

174 Tenn. at 366, 125 S.W.2d 483. To invoke laches there must be some kind of neglect or negligence on the part of the claimant. *Estate of Darwin*, 503 S.W.2d 511, 514 (Tenn.1973).

■ The Court can find no such negligence on the part of either SERF or Local 175 in this case. Arp did submit monthly reports to SERF and SEHF showing the amount contributed for each employee. Wilson was listed on SEHF reports, but not on SERF reports. While the two funds utilize the same computer and the same plan administrators, they utilize different personnel to make the thousands of entries that must be made each month. This Court cannot say that SERF had any duty to ascertain that Arp should have been making reports and contributions to it as well as to SEHF. SERF justifiably relies on Arp and other employers to submit accurate reports. Even if SERF had learned that Arp was making SEHF contributions for Wilson, this would not have necessarily obligated SERF to inquire further since there had developed a practice of allowing non-bargaining unit employees to contribute to one or the other of the plans. If

SERF had determined that Arp was only contributing to SEHF, it might reasonably have concluded that Wilson was a non-bargaining unit employee—which, it turns out, he was not. SERF certainly had no duty to make actual inquiry into Wilson's precise job duties. The same can be said for Local 175. SERF promptly pursued its claim against Arp as soon as it had actual knowledge of Arp's failure to make SERF contributions for Wilson. Any delay caused by a failure to detect the failure to contribute is reasonably explained or justified—thus making the laches defense inapplicable. *Freeman v. Martin Robowash, Inc.*, 457 S.W.2d 606, 611 (Tenn.App.1970).

 While it may be true, as Arp now points out, that if it is now required to make Wilson's SERF contributions, Arp will be unable to recover Wilson's SERF's contributions from others, Arp nevertheless must bear a share of the responsibility for not making the contributions in the first place. It might also be the case that Arp has benefited from lower labor costs in the past—due to his failure to make SERF contributions for Wilson.

## V. CONCLUSION

29 U.S.C. § 1132(g)(2) provides the formula for measuring the recovery of delinquent fund contributions in suits brought under ERISA by fiduciaries. Pursuant to this statute, the Court in this case must award SERF the following:

1. The unpaid contributions. (The Court has calculated this at $11,827.70).
2. Double interest on unpaid contributions. The rate of interest on delinquent contributions under the trust instrument here was six percent (6%) per annum until January 1, 1985, and twelve percent (12%) per annum thereafter. The Court requests that the parties endeavor to agree on the amount of interest calculated on this basis and, if agreement can be reached, submit that figure to the Court within ten (10) days of the filing of this memorandum.
3. Reasonable attorney's fees. In this connection, counsel for the plaintiffs are requested to submit to the Court within ten (10) days of the filing of this memorandum sufficient information for the Court to approve a fee.

The entry of final judgment will await the ascertainment of interest and plaintiffs' attorney's fees.