IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE

**MACK BROWN v. DWIGHT W. OGLE, ET AL.**

**Direct Appeal from the Chancery Court for Sevier County**
**No. 83-9-364  W. Dale Young, Judge, Sitting by Interchange**

**No. E1999-02513-COA-R3-CV - Decided May 10, 2000**

        This is a suit wherein the Plaintiff seeks damages by reason of the Defendants conspiring to deprive him of his rightful share in assets of a corporation, Toni Motel, Inc.  The suit was filed on September 16, 1983, as a share holder's derivative suit and was ultimately dismissed by the Trial Court under the doctrine of laches on the part of the Plaintiff.  The order of dismissal was entered on January 14, 1999, <u>nunc</u> <u>pro</u> <u>tunc</u> as of December 14, 1998.  The Plaintiff appeals contending laches does not apply, particularly since the suit was timely filed.  We find the Trial Court's action was appropriate and affirm the judgment entered.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court is Affirmed**

GODDARD, P.J., delivered the opinion of the court, in which FRANKS and SWINEY, JJ. joined..

Carl W. Eshbaugh of Knoxville for the Appellant

Wayne A. Ritchie of Knoxville for the Appellees

**OPINION**

        Mack Brown, individually and on behalf of Toni Motel, Inc., filed suit against the Defendants, Dwight W. Ogle, Bonnie Ogle Brown, Arlie Ogle and Ailene Ogle on September 16, 1983.  In his suit he alleges that all the Defendants entered into a conspiracy to deprive him of his rightful share in the assets of, and to eliminate his interest in, the Toni Motel, Inc., corporation.  Mr. Brown alleges among other things that the Defendants eliminated his rightful

interest in the motel by failing to record all the income received through the operation of the motel and that the motel paid Arlie and Ailene Ogle monies that were not due them.

## I. FACTS

The motel was originally established by Arlie[1] and Ailene Ogle, the parents of Bonnie Ogle Brown. Mr. Brown was married to Bonnie Ogle Brown. The parents gave the motel operation to Bonnie Ogle Brown and her brother, Dwight Ogle, in the late 1970's. The parents kept the real property and leased it to Bonnie and her brother. On October 1, 1980, Bonnie and Dwight transferred all their partnership interest to the Toni Motel, Inc., with the consent of Mr. Brown. The motel was then operated by the corporation. Mr. Brown quit his job and began working full time at the motel. At his insistence, Bonnie gave him ½ of her stock in the Toni Motel corporation.

### A. Other Litigation

On July 13, 1982, Mr. Brown filed a divorce action against Bonnie Ogle Brown, and shortly thereafter his employment with the motel was terminated. The relationship between the parties was very tumultuous to say the least. The trial court granted the divorce to Mrs. Brown. The judgment was appealed to this Court. We determined the judgment was not a final order because the trial court had made no determination as to the stock in the Toni Motel. On remand, the trial court determined that Mr. Brown owned 1/4 interest or 250 shares of stock; Mrs. Brown owned 1/4 interest or 250 shares of stock; and, Dwight Ogle owned ½ interest or 500 shares of stock in the motel. A final judgment in the divorce case was entered on July 17, 1985. Neither party appealed the July 17, 1985 judgment.

Because of the strained relationships between Mr. Brown and the Ogle family during the divorce, Dwight and Bonnie, who together owned 3/4 of the stock of the Toni Motel corporation decided to dissolve the corporation. The corporation was disolved in September 1983. In March 1984, Mr. Brown cashed a check for $41,224.74 for his 1/4 interest in the corporation.

On July 12, 1982, the day after Mr. Brown filed the divorce action, he filed with the Internal Revenue Service an application for Reward for Original Information against Toni Motel, Inc., Plaza Motel, Inc., Arlie Ogle, Dwight Ogle, Johnny Newman, and Mrs. Brown. Mr. Brown reported that his wife and other Defendants were not reporting all their income and paying the appropriate income tax. This resulted in criminal charges being filed against the Ogles.[2] The case concluded in 1987 with the acquittal of all the Defendants.

---

[1]Arlie Ogle died on December 28, 1991.

[2]*See* In re United States of America v. Dwight W. Ogle, Bonnie A. Brown, Robert T. Newman, and Diana G. Brown, Eastern District of Tennessee, Docket Number CR-3-86-16.

## B. Chronology of This Case

The chronology of this case is germane to disposition of this matter. The case was filed on September 16, 1983, during the pendency of the divorce action filed by Mr. Brown. On December 13, 1983, the Defendants filed an answer and a counterclaim against Mr. Brown. The Defendants did not raise the defense of laches in their answer.

On March 4, 1986, the attorneys for the parties filed a motion for continuance from the March 6, 1986 trial date because discovery had not been completed. In their motion they stated that critical exhibits were filed with the Court of Appeals in the divorce action between the Browns.[3] From then until November 7, 1994, this case was dormant.

On November 7, 1994, a notice was sent by the trial court that this matter was set for trial on the merits on January 3, 1995.

The trial was continued at the insistence of the plaintiff's counsel to August 28, 1995. On February 23, 1995, Mr. Brown's counsel propounded discovery requests to the Defendants. On February 23, 1995, Mr. Brown's counsel filed an Answer and Motion to Dismiss the counter-complaint previously filed by the Defendants in December 1983.

On June 23, 1995, the Defendants filed a motion to dismiss on the grounds of laches and on the following day they filed a motion to dismiss based upon estoppel. In response to the Defendants' motion to dismiss on the grounds of laches, Mr. Brown cited three main reasons why he should be excused from timely prosecuting this matter.

1. He was advised by his counsel[4] that this matter should not be heard until after the divorce action became final.

2. He was advised by his counsel that this matter should not be heard until after the federal criminal prosecution was completed.

3. He experienced a variety of serious health conditions, including removal of his prostate and removal of skin cancer during the late 1980's and early 1990's.

## II. THE HOLDING OF THE TRIAL COURT

Hearings were held on the Motion to Dismiss on June 23 and June 27, 1995. The trial court entered an order on August 11, 1995, granting the Defendants' motion to dismiss with

---

[3]We note, however, that the divorce action was concluded on July 17, 1985, and no appeal was taken by either party.

[4]From the inception of the suit until October 16, 1985, Keith McCord represented plaintiff. Richard Wallace then represented Mr. Brown until November 29, 1994. Carl Eshbaugh, present legal counsel, began representing Mr. Brown on February 16, 1995.

prejudice based on laches. In the court's memorandum opinion rendered on June 30, 1995, the court made the following findings of facts.

Plaintiff sued the Defendants almost twelve years ago, filing suit on September 16, 1983.

During the pendency of this case, the Plaintiff[5] has been represented at all times by able Counsel, except for the period between November 23, 1994 and February 1995. During the time this suit has been pending, Plaintiff actively participated in and aggressively sought judicial solutions to his domestic relations case, which case was concluded in 1985, and he further vigorously sought the criminal prosecution of his former wife and his children in the United States District Court, which cases concluded in acquittals in 1987.

Plaintiff says health problems have kept him from prosecuting this case, and he says, in effect, that he was debilitated between 1988 and 1990. During that time, the record reflects that the Defendant was represented by able Counsel, that he had adequate funds to pursue the case at bar resulting from the division of marital assets and alimony received by him from his former wife and he could have authorized and directed his attorneys and Counselors to proceed with due diligence his claims filed in this case in 1983. During the entire pendency of this suit, the Court finds no reasonable and just cause given by Plaintiff for having completely and throughly slept on his rights. Equity not only requires clean hands and a pure heart, but also swift feet (Gibson's Suits in Chancery, 5th Edition. Volume 1, § 58, page 74).

During the almost twelve years this suit has been pending, the death of one of the Defendants, Mr. Arlie Ogle, has occurred. This death came some eight years after Plaintiff filed the instant case and no discovery was taken as to Mr. Ogle. Mr. Ogle would have been a substantial and material witness as to the issues raised in this case; Mr. Ogle has taken to his grave many salient facts necessary for a jury to consider in rendering justice as between these parties.

During the almost twelve years this suit has been pending, substantial, material, valuable and relevant records of the parties have been misplaced, lost and/or destroyed due to the lack of diligence on the part of the Plaintiff in pursuing his cause of action raised in this case. Some records were even turned over to former Counsel for Plaintiff in this case and Plaintiff has not, of record, made any effort of any kind or character whatsoever to ascertain whether these records still exist. During the almost twelve years this suit has been pending, Plaintiff has failed and refused to pursue any discovery in this case until the last

---

[5]Plaintiff was substituted for Defendant in the court's memorandum dated July 18, 1995.

couple of months. As a direct and proximate result of this neglect, memories have dulled and many details of the questioned transactions have been lost forever.

Because of Plaintiff's negligent lack of any interest in prosecuting his case, the Defendants have been irreparably prejudiced: (1) one of their material witnesses is now deceased, (2) important and relevant documents have been misplaced, lost and/or destroyed and (3) none of the parties, including the Plaintiff, can now remember many salient and relevant details necessary to establish the facts for a jury's consideration in this case.

The Plaintiff filed a Motion to Alter or Amend the order entered on August 11, 1995. One of the issues in the motion was that the Defendants' counterclaim has not been dismissed. More than three years later, the trial court denied the motion, noting that "its Order of August 11, 1995 dismissed this cause in its entirety;" accordingly, said Order dismissed all claims and causes of action of all parties – both the Plaintiff and the Defendants. This order was entered on January 14, 1999, nunc pro tunc to December 14, 1998. This appeal then followed.

## III. ISSUES

The appellant brings the following issues to us:

1.    The trial court's order dismissing this cause of action on the basis of laches must be reversed because the failure of the Defendants to raise the issue in their responsive pleading rendered the defense waived under the law.
2.    Even absent the deficient pleadings of the Defendants, the doctrine of laches does not apply to delays during the pendency of a civil lawsuit such as the case at bar.
3.    Even if this court were to hold that the Defendants' pleadings are not deficient and that the doctrine of laches in Tennessee can apply to post-filing delays, this is not a proper case for the application of the laches doctrine.

## IV. LAW, DISCUSSION AND DECISION

Our standard of review on appeal from a trial court's grant of a motion to dismiss is *de novo*, with no presumption of correctness as to the trial court's legal conclusions, and all allegations of fact in the complaint below are taken as true. Stein v. Davidson Hotel Co., 945 S.W.2d 714, 716 (Tenn. 1997). In this matter, there is no dispute concerning the facts material to the trial court's holding.

"Equity aids the vigilant, not those who sleep upon their rights." William H. Inman, Gibson's Suits in Chancery, § 93, p. 89 (7th ed. 1988).

The defense of laches is based on the doctrine of equitable estoppel, and is only applied where the party invoking it has been prejudiced by the delay. Freeman v. Martin Robowash, Inc., 61 Tenn. App. 677, 457 S.W.2d 606, 611 (1970). The defense of laches presents a mixed question of law and fact. Two essential elements of fact are negligence and unexcused delay on

the part of the complainant in asserting his alleged claim, which result in injury to the party pleading laches. <u>Sunderhaus v. Perel & Lowenstein</u>, 215 Tenn. 619, 388 S.W.2d 140 (1965). The question whether in view of the established facts, relief is to be denied--that is, whether, it would be inequitable or unjust to the defendant to enforce the complainants' right--is a question of law. <u>Freeman v. Martin Robowash, Inc.</u>, 457 S.W.2d at 611; <u>Jansen v. Clayton</u>, 816 S.W.2d 49, 51 (Tenn. Ct. App. 1991).

In the cases applying the defense of laches, the courts frequently cite the death of witnesses or the loss of evidence as the sort of prejudice that, coupled with an unreasonable delay, amount to laches. <u>Jansen v. Clayton</u>, 816 S.W.2d at 52; <u>Baker v. Baker</u>, 24 Tenn. App. 220, 142 S.W.2d 737 (1940); <u>Carpenter v. Wright</u>, 158 Tenn. 289, 13 S.W.2d 51 (1929); <u>Evans v. Steele</u>, 125 Tenn. 483, 145 S.W. 162 (1912).

Tennessee courts have stated the doctrine of laches as follows:

Relief is generally refused by courts of equity, because of lapse of time, only in such cases where the loss of evidence, death of witnesses or parties, and failure of memory resulting in the obscuration of facts to the prejudice of the defendant, render uncertain the ascertainment of truth, and make it impossible for the court to pronounce a decree with confidence. . .The doctrine of laches. . .is not an arbitrary or technical doctrine. No hard and fast rule for its application can be formulated.

<u>Evans v. Steele</u>, 145 S.W. at 165. *See also* <u>American National Insurance Co. v. McPhetridge</u>, 28 Tenn. App. 145, 187 S.W.2d 640, *cert. denied* (Tenn.1945)

Moreover, the application of the doctrine in the first instance lies within the discretion of the trial court and it will not be reversed except upon a showing of an abuse of discretion. <u>John P. Saad & Sons, Inc. v. Nashville Thermal Transfer Corp.</u>, 715 S.W.2d 41, 46 (Tenn. 1986); <u>Hannewald v. Fairfield Communities, Inc.</u>, 651 S.W.2d 222, 228 (Tenn. Ct. App.), *cert. denied* (Tenn.1983). Such application "depends upon the equities at stake in each individual case, and in the present suit, we feel that the practical realities of the situation allow its application." <u>John P. Saad & Sons, Inc. v. Nashville Thermal Transfer Corp.</u>, 715 S.W.2d at 46. *See also* <u>State ex rel. Wilson v. Mays</u>, 190 Tenn. 156, 162, 228 S.W.2d 97, 100 (Tenn.1950).

Equity never interferes in behalf of a party whose negligence, or delay, has caused, occasioned, or contributed to, the injury of which he complains. No one can take advantage of his own wrong; and when one of two persons must suffer a loss, that one shall suffer it whose act, or neglect, occasioned it. Clean hands, a pure heart and swift feet are required of him who seeks the aid of a Court of Conscience. If, in any case, if (sic) appears that the injury complained of might not have happened had the plaintiff, or his agents, or attorneys, been duly diligent, the Court will stay its hand and decline to interfere.

William H. Inman, <u>Gibson's Suits in Chancery</u>, § 94, p. 90 (7th ed. 1988).

Laches requires that the delay be inexcusable. To defend against a charge of laches, a party should assert sufficient reasons accounting for the delay to the satisfaction of the trial court. Mr. Brown gives the following reasons excusing the delay in prosecuting this action:

1. He was advised by his counsel[6] that this matter should not be heard until after the divorce action became final;

2. He was advised by his counsel that this matter should not be heard until after a pending federal criminal prosecution of the corporation was completed.[7] This ended in 1987 with the acquittal of all the Defendants.

3. He experienced a variety of serious health conditions, including removal of his prostate and removal of skin cancer during the late 1980's and early 1990's.[8]

Other than his poor health, the only reasons Mr. Brown gave for his delay in prosecuting this action were tactical ones. Under the facts of this case, we agree with the trial court that Mr. Brown was not diligent in prosecuting this matter. The question of diligence is one always dependent on the facts and circumstances in each particular instance. In this matter, Mr. Brown did not assert sufficient reasons accounting for the delay to the satisfaction of the trial court. See Rutledge v. Swindle, 48 Tenn. App. 482, 348 S.W.2d 888 (1960). Neither has he demonstrated adequate reasons for his delay to us.

> "There is no hard and fast rule by which to determine whether laches has barred the remedy, but each case must depend upon its own peculiar facts. What period will constitute "a reasonable time" within the meaning of the rule laid down, is a question for the judicial discretion of the court in most cases, and its exercise of that discretion will not be revised, if not abused; but no unreasonable diligence will be required.

---

[6]From the inception of the suit until October 16, 1985, Keith McCord represented Plaintiff. Richard Wallace then represented Mr. Brown, until November 29, 1994. Carl Eshbaugh began representing Mr. Brown on February 16, 1995.

[7]Mr. Brown filed allegations with the IRS that his wife and the other Defendants were not reporting all their income and paying the appropriate income tax; he also sought a reward from the IRS for reporting his wife and the other Defendants.

[8]The record in this case reveals that he alleged in his divorce action in 1982 that he had cancer and his wife and children would not attend to his needs. Again, on July 23, 1987, he was well enough to have his deposition taken for the case in the United States District Court Eastern Division, In re United States of America v. Dwight W. Ogle, Bonnie A. Brown, Robert T. Newman, and Diana G. Brown, Docket Number CR-3-86-16. He vigorously participated in both actions.

Rutledge v. Swindle, 48 Tenn. App. 482, 348 S.W.2d 888, 893 (1960).

Additionally, Mr. Brown claims that the Tennessee Rules of Civil Procedure require a party to "set forth affirmatively facts in short and plain terms relied upon to constitute [avoidances and affirmative defenses]." Rule 8.03, Tenn.R.Civ.P. A party may be deemed to have waived any defense (with some exceptions not relevant here) that he does not present by pleadings or motions. Rule 12.08, Tenn.R.Civ.P. Richardson v. Richardson, 969 S.W.2d 931 (Tenn. Ct. App. 1997). We do not find Mr. Brown's averment that the Defendants should have alleged laches in their answer shortly after this suit was filed in 1983 to be well taken. They had no way of knowing at that time that Mr. Brown would be dilatory in prosecuting this suit. They had no way of knowing that Arlie Ogle would die eight years later and that no preservation would be made of his evidence. They had no way of knowing various records, which were used in two separate legal actions instituted by Mr. Brown, would be lost or destroyed. It is only after the years passed that the Defendants realized that the doctrine of laches would be applicable to this matter. At that point, the Defendants acted, setting forth their claim of laches in a motion after a twelve year delay in prosecuting this matter.

Finally, Mr. Brown contends that Tennessee law does not recognize the basis for a delay after bringing suit under the Doctrine of Laches. He claims that Tennessee law only recognizes the Doctrine of Laches in the filing of a suit. We disagree. A case in point is In Re: Estate of Darwin, 503 S.W.2d 511 (Tenn. 1973), in which our Supreme Court, *sua sponte*, remanded a case to the trial court for a determination of any prejudice resulting to the defendant by the delay. In Darwin, G. B. Hillis, principal, and Charles B. Darwin, one of three sureties, executed a bond in accordance with T.C.A. § 57-309 to the Commissioner of Revenue to cover taxes accruing from the wholesaling of beer, ale, and other malt beverages. The bond was executed on October 19, 1963 and provided that an action could be maintained on the bond against any one or all of the sureties without making the principal a party since all were jointly and severally liable. Charles Darwin subsequently died on February 6, 1964 and publication of a notice to creditors was instituted on February 19, 1964. On December 8, 1965, the Commissioner of Revenue filed a claim against Charles B. Darwin's estate with regard to the bond in the amount of $2,871.87. Executors of Darwin's estate contended that the claim was not filed within the nine months statute of limitations as outlined in T.C.A. 30-513; therefore they took exception to it. On May 8, 1973, the Probate Court heard the issue and held that the claim was for a debt arising under a contract rather than for taxes; therefore T.C.A. § 30-513 barred the claim as it was filed subsequent to the expiration of the nine months limitation.

The issue before the appeals court was whether T.C.A. § 30 -513 barred the State's claim or whether another statute of limitations was applicable. The court ascertained that the claim was that of a tax as between the State and the Principal, C. B. Hillis, and that T.C.A.§ 67-1323 was the appropriate statute of limitation applicable to the situation. Applying that section to the facts of the case, the court found it to be clear that the six year statute of limitations would not

bar the State's claim because the claim suit was filed within six years from the date the taxes became delinquent.

The Darwin court, *sua sponte,* addressed the question of whether the State was equitably estopped from collecting from Darwin's estate because of laches and remanded the case to the lower court for a determination as to whether all the requirements of laches were present. In doing so, the court said:

> This Court has consistently held that laches may be invoked only when there is negligence on one side resulting in injury therefrom on the other. *See*, *Samuel v. King*, 158 Tenn. 546, 14 S.W.2d 963 (1928); *State v. McPhail*, 156 Tenn. 459, 2 S.W.2d 413 (1916); *Evans v. Steele*, 125 Tenn. 483, 495, 145 S.W. 162 (1911). Moreover, mere delay is insufficient to raise the doctrine of laches. But, in *Nicholson v. Holt*, 174 Tenn. 358, 366, 125 S.W.2d 483, 486 (1939), this Court indicated that:
>
> > "The doctrine of laches . . . is not an arbitrary or technical doctrine. Where it would be practically unjust to give a remedy, either because the party has, by his conduct, done that which might fairly be regarded as equivalent to a waiver of it, or where, by his conduct and neglect, he has, perhaps, not waiving that remedy, yet put the other party in a situation in which it would not be reasonable to place him if the remedy were afterward to be asserted, in either of these cases, lapse of time is most material."
>
> This Court continues to adhere to these equitable principles.
>
> In the instant case, however, the facts are insufficient to allow an accurate determination of whether to apply these principles. It results therefore, that this issue must be remanded to the Probate Court to determine whether the nearly eight year delay[9] was caused by the State and whether Darwin's estate was injured or placed in an unreasonable position by the delay.

Darwin, 503 S.W.2d at 514.

Another case by our Supreme Court supporting that a case may be dismissed based upon laches in the prosecution of the suit, not just in the filing of the suit, is State v. Patterson, 155 Tenn. 169, 290 S.W. 973 (Tenn. 1927). The Supreme Court stated in that case

> That a bill in chancery may be, as a matter of practice, dismissed upon motion for laches in the prosecution of the suit is distinctly recognized in *Cowan, McClung & Co. v. Donaldson*, 95 Tenn. 322, 32 S.W. 457, and *Collins v. Insurance Co.*, 91 Tenn. 432, 19 S.W. 525.

State v. Patterson, 290 S.W. at 975.

_____

[9]As already noted the claim was filed on December 8, 1965 and the hearing was held on May 8, 1973.

Moreover, we find that this is a proper case for the application of the laches doctrine. A more classic case cannot be imagined. The lengthy unreasonable delay by Mr. Brown coupled with the prejudice to the Defendants, one of whom died eight years after the instigation of this suit, the loss of documents, and the lack of memory of the parties to pertinent facts relating to their defense, all confirm that the criteria for dismissal based on laches was more than amply met in this case. We find the Chancery Court exercised its discretion appropriately in granting the motion to dismiss for laches in the prosecution of this case. We find no merit in any issues raised by Mr. Brown.

## V. CONCLUSION

The trial court is affirmed in all respects. This matter is remanded to the trial court for such further proceedings as may be necessary consistent with this opinion and collection of costs below. Costs on appeal are adjudged against Mr. Brown and his surety.